There is no difference between a sale of real and personal estate at auction, in relation to the statute of frauds. In either case, if the auctioneer inserts in his sale book the purchaser's name, the requisitions of the statute are complied with——
The auctioneer being considered for this purpose, the agent of both parties.
'A trustee cannot be a purchaser at his own sale,

SINGSTACK'S EX'RS. VS. HARDING.

APPEAL from *Frederick* County Court. This was a special action on the case, to recover from the defendant, (now appellee,) the difference between the amount of the purchase money for which certain real estate was sold to him at auction by the plaintiffs, (the appellants,) and the amount which that property brought on a resale—the defendant having refused to comply, &c. The general issue was pleaded. At the trial the plaintiffs offered in evidence the will of *Philip Singstack*, dated the 3d of October 1803, containing among other provisions, the following: "The residue of my estate, whether houses, lands, store goods, negroes, or other property real, personal or mixed, my will and desire is may be sold most for my interest, at the discretion of my executors hereafter named, both as to time of sale and terms of payment, and the money arising therefrom, my will and desire is, may be put to interest," &c. "But in case none of my said children should marry, or live to possess my property as aforesaid, or should die without wife or issue, and intestate, my will and desire is, in such case, (and in such case only,) that all my property intended for them, including in that case my lands at *Beason Town*, may be sold as aforesaid, and the money arising from such sale as aforesaid may be received by my said executors," &c. "And lastly, I hereby appoint and nominate my friends and neighbours, *Ignatius Davis* and *George Buckey*, the executors of this my last will and testament, and do hereby vest in them full powers to transfer and convey, by deed or otherwise, all my right to the lands and other property hereby directed to be sold in manner aforesaid." The plaintiffs also offered in evidence

1816.

Singstack
vs
Harding

the letters testamentary granted to them on the 21st of December 1804; and that on the 31st of January 1805, public notice having been first given, they set up at public auction the house and lot mentioned in the declaration, in *Buckey's Town*, in *Frederick* county, the same being a part of the real property of *Philip Singstack*, deceased, and by his will directed to be sold by the plaintiffs. That at the day and place of sale, before and during the time of sale, the following written conditions of sale were publicly set up, which said terms were signed by the plaintiffs, and several times publicly proclaimed by the auctioneer before and during the said sale, viz. "Conditions—All who purchase of the personal property now offered for sale, to an amount exceeding three dollars, will be entitled to nine months credit, on passing their notes, on interest, with approved security—the interest to be released if such sums are punctually paid; for less sums the cash must be paid; no goods are to be removed before they are settled for. Any person purchasing, and not complying with those conditions some time on the day of sale, are to forfeit such sums as may be lost on a second sale of the same goods. If the executors should bid for any article, it is to be considered as bidding for themselves, and not for the estate, unless it be made known when the bid is made that they bid for the estate. For the real property one third of the purchase money will be required in hand, and bonds, on interest, with approved security, for the residue, divided into three equal annual payments—interest on the whole to be paid annually unless other proposals may be made by the purchasers that may be as agreeable to the executors. Those who purchase real property, and may not comply with those conditions, are also to be subject to pay any loss that may be sustained on a second sale of the same property. In other respects the sale to be conducted and regulated as is customary in such cases." They also gave in evidence, that at the said sale, on the day above mentioned, the defendant bid $2,000 01 for the said house and lot, and that being the highest bid offered, the house and lot were struck off to the defendant, by the auctioneer. That the clerk of the vendue thereupon, by the public direction of the auctioneer, entered the name of the defendant in the vendue book as the purchaser of the said house and lot for the said sum. That the defendant, when he made the said bid, was near the clerk of the vendue, and saw him with the vendue book before him. That on the said 31st of January 1805, after the said sale, the defendant told *Casper Mantz*, a witness in this case, that he was offered the interest of the purchase money as rent for the house and lot, and appeared to be satisfied and pleased with his purchase. That shortly after the sale, the defendant entered into the possession of the house and lot, and continued in the possession thereof some weeks; that afterwards, and before the 30th April 1805, he told the plaintiffs that he would not keep the house and lot, and refused

to pay the money, or give the bonds as mentioned in the written terms of sale. Whereupon the plaintiffs informed the defendant, that they would proceed to sell the said property, and would hold him answerable for any loss that might be sustained on the second sale, to which the defendant made no answer. That afterwards, on the 30th April 1805, they inserted in two newspapers printed in *Frede-rick Town*, the following advertisement: "Public notice. Mr. *John L. Harding* being the purchaser at public sale of the house and lot late the property of *Philip Singstack*, deceased, on the great road leading from *Frederick-Town* to *Noland's* ferry, at the place called *Buckey's-Town*, and the said *Harding* not complying with the conditions of the said public sale, we shall, on the 24th of May next, offer the said house and lot again at public sale on the former terms, to wit: One third of the purchase money to be paid in hand, and the residue in three equal annual instalments, bearing interest from the day of sale; the interest on the whole to be paid annually, for which bond and security must be given. A deed to be executed by us when the whole of the purchase money is paid." Which said advertisement was published in each of the newspapers once a week until the 24th May 1805. That *Buckey's-Town*, a village in which said house and lot is situated, is between five and six miles from *Frederick-Town*. That afterwards, in pursuance of the said advertisement, and at the time and place therein mentioned, the plaintiffs did set up the same house and lot at public auction, on the following conditions:—"The conditions of our former sale on 31st January last, being as follows:—For the real property one-third of the purchase money will be required in hand, and bonds, on interest, with approved security, for the residue, divided into three equal annual payments, interest on the whole, to be paid annually, unless other proposals may be made by the purchaser that may be as agreeable to the executors. Those who purchase real property, and may not comply with those conditions, are also to be subject to pay any loss that may be sustained on a second sale of the same property. And as Mr. *John L. Harding* then became the purchaser of a part of the real property above named, to wit, the house and lot, on those conditions, and has not complied with the said conditions of sale—we do, for and in behalf of the estate for which we act, now offer at public sale, a second time, on the former terms and payments as above expressed, the said house and lot of ground, and shall claim of the said *John L. Harding*, any loss that may be sustained on a second sale of the same property. All who purchase the personal property now to be offered at public sale to an amount exceeding one dollar," &c. &c. At which said last mentioned auction, a certain *Jeremiah Tarlton* bade $1500 01, which being the highest bid offered, he became the purchaser, and the house and lot was struck off to him. That many people attended

1816.

Singstack
vs
Harding

the said second sale, and that it was very generally known in *Frederick Town*, and the neighbourhood. That the plaintiffs seemed anxious that the said house and lot should sell for its full value. That many bids were made by different persons, and that the sale was altogether very fairly conducted; and that it was cried by the auctioneer on the last bid for half an hour before it was struck off. The plaintiffs then offered in evidence a deed from the plaintiffs to the said *Tarlton*, for the said house and lot so purchased, dated the 25th of June 1805. The defendant then offered evidence, that at the said first sale the defendant himself bid $1600, and *Ignatius Davis*, one of the plaintiffs, for and on behalf of the estate of *Singstack*, deceased, the testator, bid $2000, and that the defendant then bid one cent, on which bid the property was struck off to him for $2000 01. That the said property was not worth $2000, but that the utmost worth of it did not exceed $1500. The defendant further offered in evidence, that the house and lot at the second sale, was purchased by *Tarlton*, for the use and benefit of *George Buckey*, one of the plaintiffs; and gave in evidence a deed from *Tarlton* to the said *Buckey*, for the said house and lot, dated the 25th of June, 1805, in consideration of $1500 01. The plaintiffs then prayed the opinion and direction of the court to the jury, that if they find from the evidence that the defendant saw and read the written terms of sale herein first before mentioned, of the house and lot mentioned in the declaration, before he made the bid by which he became the purchaser of the said house and lot, and that the same was struck off to him on his bid of $2000 01, as above stated, and that the auctioneer publicly directed the clerk of the vendue, in the presence and hearing, and with the consent of the defendant, to write the name of the defendant in the vendue book as the purchaser, and that the same was accordingly immediately done in the presence, and with the consent of the defendant; and that the defendant entered into the actual possession of the said property. And if they further find that he afterwards refused to pay the money, or give the bonds as required by the said written terms of sale first above stated, and that the plaintiffs then gave him notice that they should sell the house and lot, and hold him answerable for any loss that might arise on the second sale, and that the defendant did not object thereto; and that the second sale was sufficiently notified and fairly understood, and that the house and lot, at the second sale, sold for $1500 01, that then the plaintiffs were entitled to recover. This opinion and direction, the Court, [*Buchanan*, Ch. J. and *Clagett* and *Shriver*, A. J] refused to give. The plaintiffs excepted; and the verdict and judgment being against them, they appealed to this court.

The cause was argued at June term 1811, before POLK, NICHOLSON, and EARLE, J. and re-argued at the present term before NICHOLSON, EARLE, JOHNSON, and MARTIN, J.

*Taney*, for the Appellants. The principal objection made at the trial in the county court, by the defendant, was that the first sale was void by the statute of frauds, 29 Car. II, ch. 3, and on this ground the court decided that the plaintiffs had no right to recover. In *Simon vs. Motivos*, 3 *Burr*, 1921, no distinction is made between sales of lands and goods, and although in some later cases it has been decided that sales of land are within the statute, there is nothing in the words of the statute to warrant the distinction. See sec. 4 and 17, 1 *Com. on Cont.* 75, 81. *Roberts on Frauds*, 115, 116. *Coles vs. Trecothick*, 9 *Ves.* 249. And nothing can account for the distinction that has been taken but the policy of the *English* laws to fetter the conveyances of land. The defendant in this case stood by, and consented to the entry of his name as the purchaser, and by subsequent conversations and conduct, confirmed the act of the clerk as his agent. But if sales of land are within the statute, yet the subsequent possession of the defendant takes it out of the statute. 1 *Com. on Cont.* 79, 81. It may be objected that these are chancery cases, but the court of chancery cannot compel the execution of a contract made void by statute. This would be to make the court of chancery above the law. The contract is void, or it is not. If it is void by the statute, the court of chancery cannot compel execution of it. But the court of chancery does compel execution, where possession has been delivered. Therefore, where possession has been delivered, the case is not within the statute. In the decree in the case of *Dallam vs. Onion*, in chancery in 1790, it is laid down as settled law, that sales of lands at auction are not within the statute of frauds. It was objected at the trial, though it did not seem to be relied on, that even if the first sale were valid, yet the difference of sales being in the nature of a penalty, could not be recovered. The case of *Simon vs. Motivos*, and *Mertens vs. Adcock*, 4 *Esp. Rep.* 251, are a complete answer to this objection. It may also be objected now, that at the second sale the property was purchased for one of the plaintiffs. This cannot be taken advantage of by any but the heirs of *Singstack*. It was for the defendant's advantage, as he did actually bid higher than any one else. As between all persons, but the heirs of the deceased, such a sale is good. It is only for their protection and benefit, that it will be set aside if, when they come of age, they chuse to require it. It was laid down by the chancellor, that if all the heirs were of full age, and consented, the sale might be ratified And in this case it was for the benefit of the defendant that the sale was made. The children of *Singstack* have no interest in the second sale, if the first was good.

*Shaaff*, for the Appellee. He contended, 1. That the sale is a verbal sale under the statute of frauds. 2. That the property, being worth no more than $1500, and being

purchased by one of the plaintiffs, the plaintiffs are not entitled so recover. 3. That there is no good consideration for the *assumpsit* declared on.

1. This sale is void by the statute of frauds, being a sale of lands. *Buckmaster vs. Harrop*, 7 *Ves.* 341. *Coles vs. Trecothick*, 9 *Ves.* 234. *Blagden vs. Bradbear*, 12 *Ves.* 466. *Mason vs. Armitage*, 13 *Ves.* 25. *Buckmaster vs. Harrop, Ibid* 456. *Wain vs. Warlters*, 5 *East*, 10. *Standsfield vs. Johnson*, 1 *Esp. Rep.* 101. *Walker vs. Constable*, 1 *Bos & Pull*, 306. All the authorities on this subject are put together in *Noland on Contract*, 176. The reason assigned why a sale by auction, where the auctioneer sets down the name of the purchaser, is still within the statute, is that the whole contract is *not* in writing, being only a memorandum of the name of the purchaser. A moment's reflection will show that the defendant's having taken possession cannot aid this case. The reason why a court in equity will in such cases interfere, is that such taking possession is evidence of a subsequent agreement, and upon that ground alone they enforce it, But in such case chancery will not enforce the contract, except by giving the party the consideration of the contract. In the present case, if application was made to equity by the vendors to support this contract upon the ground of the vendee's possession, &c, it would only compel the execution, upon the seller's conveying the land. Chancery never interferes to recover a penalty. This suit is for a penalty. It must be seen at once, that by resorting to the possession subsequently taken, the party can only succeed upon the ground that the contract continues, viz. That the vendee is entitled to the land, and the vendors to the money. Whereas this suit is on the principle that the vendee's right is gone, and the suit is for a penalty, and of course can only be sustained on the ground of the validity of the original sales by auction.

2. In this case one of the plaintiffs is the purchaser, and sales of this nature are considered in law as *fraudulent*. 2 *Fonbl.* 159. *Carter vs Lilly & Browning*. per Chan. *Hanson*, in 1805. This is an action of *assumpsit*, and it has always been considered, that a man, (especially in *assumpsit*,) shall never take advantage of his own conduct, which is in its nature fraudulent. In this case the vendor buys the property himself at the second sale—it is immaterial whether this particular sale was fair or not—the policy of the law in such cases is to prevent a man's buying at his own sale, and to prevent these frauds which might be practised, if such sales were permitted. It is contended by the appellees, that this second sale cannot be such a one as must have been contemplated by the terms of sale. The parties must have only meant a valid sale, a fair sale in legal contemplation, not such a sale as the vendors were bound not to make; not such a sale as might be vacated. If this is correct, there has been *no second sale*, under the true meaning of the terms of sale. It has been contended

1816.

Prentiss & Carter
vs
Gray

by the appellants' counsel, that the validity of this second sale cannot be controverted by the defendant, (*Harding*,) that being a question solely between the trustees, and the heirs. A slight examination will shew that this doctrine is not tenable. Suppose that the heirs, (as they may,) shall in future determine that this purchase by the trustee is not valid, the result is, that the second sale to the trustee is vacated, the first sale in force, and the purchaser, (the defendant,) liable under his contract—if it should be supposed to be valid, either as good, being by auction, or confirmed by taking possession—in which case the defendant would be liable for the purchase money, and (if this judgment should be reversed and he be compelled to pay the forfeiture,) be obliged also to pay the penalty. In this branch of the enquiry the question is as to the validity of the second sale—Because, even supposing the first sale not affected by the statute, yet the plaintiffs cannot recover if the second sale is not good, the present suit being for a forfeiture for not complying with the first sale.

3. This question depends on the second point, because if the second sale is not valid there is no consideration.

NICHOLSON, J. delivered the opinion of the court. The court are of opinion in this case, that the original sale to the appellee of the house and lot, was a good sale, the auctioneer being the agent of both parties, having entered the appellee's name in the auction book as the purchaser. The uniform current of the decisions have been, that such an entry was a sufficient memorandum in writing, of the contract in the sale of chattels, to gratify the requisitions of the statute of frauds; and that statute makes no distinction between a memorandum in writing for the sale of chattels, and the sale of lands.

But the court are of opinion, that the pretended sale to *Turlton*, being for the benefit of one of the executors, was no sale, and that therefore the appellee was not liable for the difference in the price arising from that supposed sale, and the original sales to him.

JUDGMENT AFFIRMED.