### SMITH v. HARRIGAN.

*(Supreme Court, Special Term, New York County. September, 1891.)*

JUDICIAL SALE—SETTING ASIDE—INTEREST OF AUCTIONEER.

The fact, undisclosed to bidders, that the auctioneer officiating at a judicial sale is a party to the action, and interested in the property sold, renders the sale voidable, at the option of the purchaser, though no actual fraud or bad faith is shown, and though the auctioneer's interest was only that of tenant by the curtesy.

At chambers. Action by Orison B. Smith, as trustee, against Susan Harrigan to foreclose a mortgage. The property having been sold under a decree of foreclosure, the purchaser refused to take title, and plaintiff now moves for an order that the purchaser be held for any deficiency that may arise on a resale.

*James S. Greves,* for plaintiff.    *Alex. Thain,* for defendant.

O'BRIEN, J. The motion for an order directing a resale of the premises to foreclose a mortgage on which the above action was brought has already been disposed of, leaving still for determination the question whether the plaintiff is entitled to an order adjudging the purchaser at the sale liable for any defi-

ciency which may arise on such resale. The purchaser objects to taking title, and asks for a return of the money paid upon his bid, alleging as a reason that the auctioneer who sold the property was a defendant in the suit and interested in the property sold. There is no claim made of bad faith or actual fraud upon the part of the auctioneer, and although the suggestion that other than *bona fide* bids were made, this, in the absence of any proof, must be disregarded. The naked legal question is thus presented whether or not a sale conducted by an auctioneer who is interested in the property to be sold, and who fails to disclose this fact, can be availed of as an objection by a purchaser. Upon grounds of public policy, it is important that the utmost fairness should be observed in judicial sales, and the law, as shown by the decisions, has been ever vigilant to protect the public who, as intended purchasers, attend such sales. In *Randall* v. *Lautenberger*, 16 R. I. 159, 13 Atl. Rep. 100, it is said: "An auctioneer is the agent of the seller in making the sale. When, however, the property is struck off, he becomes also the agent of the purchaser to the extent of binding both parties by his memorandum of sale. Up to this point his duty is to the vendor." It was accordingly held in that case that if, without the seller's assent, he bids for a purchaser, the sale is not enforceable, thus following the rule laid down in *Brock* v. *Rice*, 27 Grat. 812: "That no person employed or concerned in selling at a judicial sale is permitted to become a purchaser, or even to act as a purchaser. It is impossible in good faith to combine the inconsistent capacities of seller and buyer, crier and bidder, in one and the same transaction. If the auctioneer faithfully discharges his duties, he will, of course, honestly obtain the best price he can for the property. On the other hand, if he undertakes to become a purchaser for himself or for another, his interest and his duty alike prompt him to obtain the property on the most advantageous terms." In the same case cited above, (page 161, 16 R. I., and page 102, 13 Atl. Rep.,) it is said: "The conduct of an auction sale is so completely in the hands of an auctioneer that it is an easy thing for him to strike off property according to his interest, even though by further urging other bids might be made. It is not enough to say to the seller, 'You cannot prove that I could get more.' There must be no room for temptation and the hazard of abuse. Upon this ground, sales for a fair price have been set aside in some of the cases." The auctioneer being, therefore, the agent for one or both of the parties at the same or different times during the sale, and the falling of his hammer fixing the rights of the buyer and seller, and his memorandum, signed by him, being a sufficient written contract in law to bind both parties under the statute of frauds, it seems but right that, as between the parties, he should be indifferent. This, of course, does not mean that he should not exert himself for the seller, in order to obtain the best price possible, for to him he owes that duty up to the time when the property is struck off. Still he should be indifferent in the sense that he should have no interest so opposed to *bona fide* bidders or purchasers at the sale as would induce him, while acting presumably as agent for another, to take the position and the advantages accruing to a principal. It has been repeatedly held that a person will not be permitted to conduct negotiations, under pretense of acting as agent for another, and then take the position and advantages accruing to a principal. Nor will one, acting as trustee or in a fiduciary relation to others, be permitted to deal with the trust property for his own profit or advantage.

The cases on this subject are ably and exhaustively collated and discussed in the case of *Metropolitan El. R. Co.* v. *Manhattan Ry. Co.*, 14 Abb. N. C. 252, wherein the principle is thus stated: "It will not be denied, I imagine, that as between natural persons, where an agent or trustee has a personal interest opposed to that of the principal, or where one acts as agent of both parties to the contract, although he may have no per-

sonal interest on either side, the principal or *cestui que trust* may avoid the contract at will, even if there be no actual fraud or damage." In that case the following language, used in the case of *Davoue* v. *Fanning*, 2 Johns. Ch. 260, was quoted with approval: "However innocent the purchaser may be in the given case, it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to adjudge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power, distinctly and clearly, to show it. There may be fraud, as Lord HARDWICKE observes, and the party not able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come in at his option, and, without showing an actual injury, insist upon having the experiment of another sale. It is a remedy which goes deep, and touches the very root of the evil." In *Taussig* v. *Hart*, 58 N. Y. 425, the court says: "It is no answer that the intention was honest, and that the brokers did better for their principal by selling him their own stock than they could have done by going into the open market. The rule is inflexible, and, although its violation in this particular case caused no damage to the principal, he cannot be compelled to adopt the purchase." In *New York Cent. Ins. Co.* v. *National Protection Ins. Co.*, 14 N. Y. 85, it was said: "It is not necessary for a party seeking to avoid a contract on this ground to show that an improper advantage had been gained over him; it is his option to repudiate or to affirm the contract, irrespective of any proof of actual fraud." To quote again from the case of *Metropolitan El. R. Co.* v. *Manhattan Ry. Co.*, *supra*, in the language of the learned judge, who, after reviewing the above and many other cases, says: "It was intimated that although this rule was so stringent as to purchases and sales, yet that it was not applied with the same rigor to other contracts. I have failed to find any foundation for this distinction, either upon principle or authority. It may be true that most of the adjudicated cases have arisen in reference to purchases and sales, but no distinction has been made by any court between contracts of this nature and any others which were tainted with the same infirmity. There is no reason for any such limitation, and I do not find that it has ever been attempted to be enforced."

The principle underlying these decisions is equally as applicable to an auctioneer as to any other kind of agent. Strictly speaking, the auctioneer, as before stated, is the agent of the seller in making the sale; but when the property is struck off he becomes also the agent of the purchaser, to the extent of binding both parties by his memorandum of sale. It has therefore been suggested that, whether interested or not in the property, his duty was to obtain the highest price that could be had for the property. A distinction, however, is to be observed between a case where the auctioneer is and where he is not interested in the property itself. In the former, the temptation may be present to impose on *bona fide* bidders by increasing the price beyond the actual bids received. The fact that the auctioneer's fees are fixed by law, and are the same whether the parcel sold brings a large or small price, may be urged to support the view that this was intended to put the auctioneer in a position of entire indifference, so that he might perform his legal function of acting honestly between buyer and seller, thus removing any inducement to get more than the price honestly bid. As said in *Ex parte James*, 8 Ves. 337: "This doctrine as to purchases by trustees, assignees, or persons having a confidential character stands much more upon general principles than upon the circumstances of any individual case. It rests upon this: that the purchase is not permitted in any case, however honest the circumstances, the general interests of justice requiring it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth in much

the greater number of cases." And I take it, therefore, it is not necessary that it should be shown affirmatively that fraud or imposition was practiced, or that the amount bid was in excess of the value of the property. If the principles referred to in the cases cited are applicable to an auctioneer who was interested in the property, which is a subject of a judicial sale, then this circumstance, undisclosed to bidders, would of itself be sufficient. It has been urged, however, that the interest of the auctioneer in the property was remote, he holding an estate as tenant by the curtesy. This is a definite, fixed interest in property under the law. In *Davoue* v. *Fanning*, 2 Johns. Ch., cited above, it was held "that if a trustee or person acting for others sells a trust-estate, and becomes himself interested in the purchase, the *cestui que trust* is entitled as of course to have the purchase set aside, and the property re-exposed to sale. And it makes no difference in the application of the rule that the sale was at public auction, *bona fide*, for a fair price, and that the executor did not purchase for himself, but a third party, by a previous arrangement becoming the purchaser to hold in trust for the separate use and benefit of the wife of the executor, who was one of the *cestuis que trustent*, and had an interest in the land under the will of the testator."

This, and many other cases that might be cited, would be authority for the position that it is the principle that one is interested in the property, and not the extent of his interest, or that one has a confidential relation towards others, be that relation greater or less, that should determine the conclusion to be arrived at. As already stated, the doctrine stands much more upon general principle than upon the circumstances of any individual case. My conclusion, therefore, is that, the auctioneer having been a party to the foreclosure suit, and his entire family, including himself, having an interest in the property sold, his failure to disclose this fact to the bidders at the sale rendered the same voidable, and subject to be set aside at the instance of the purchaser thereat. The motion to hold such purchaser liable for any deficiency that may arise on a resale, by reason of his refusal to complete his purchase, should therefore be denied.