## CHARLES J. MOORE *vs.* ELEANOR TAYLOR, MARGARET ANN JENIFER ET AL.

*Oral Appointment of Agent by Husband and Wife—Memorandum Required by 4th Section of Statute of Frauds—Sales at Public Auction—Purchaser from Heirs of Decedent upon whose Estate no Administration was Granted—Assignment for Benefit of Creditors—Death of Party Pending Appeal.*

The heirs to whom an estate descended agreed in writing that, in order to avoid a partition suit, the property should be sold by a certain auctioneer. One of the heirs, a married woman, became the purchaser through an agent appointed orally by her and her husband. The auctioneer made a memorandum of the sale at the time. *Held,* that the purchase was binding on the married woman.

When the memorandum of a contract under the fourth section of the Statute of Frauds is signed by an agent, it is not necessary that he should have been appointed in writing.

When land is sold at public auction, the auctioneer is the agent of both buyer and seller to sign the memorandum required by the statute; and the same is complete when he makes an entry of the purchaser's name and the terms of the sale.

Where a party executes a deed conveying all his property to a trustee for the benefit of creditors, and the trustee subsequently under an order of Court reconveys the property to the grantor, the effect of the deed of trust is entirely nullified; and the mere fact that a creditor of the grantor filed a claim in the cause after the passage of the order and before the actual reconveyance, does not suspend its operation. A subsequent purchaser from the grantor acquires a good title.

W. conveyed his interest in certain land to his brothers in trust to pay the income to himself for life, and upon his death, in default of testamentary appointment, to distribute "the principal sum thereof" to his brothers and sisters. Upon his death no letters of administration were taken out. *Held,* that a *bona fide* purchaser of the land from said grantees seven years after the date of the deed, would have a complete defence to the claims of possible creditors of W.

Under the law as it stood at the time of the death of a married woman seized of property, her husband was entitled to act as her administrator without taking out letters. *Held,* that a *bona fide* purchaser of land from her heirs, twenty years after her death, would take a title free from the claims of any creditors of the married woman who might subsequently appear.

Where one of the parties to an appeal dies after the cause has been argued and submitted, the judgment of the Court of Appeals has the same effect, under Code, Art. 5, sec. 75, as if the party were alive.

Appeal from a decree of the Circuit Court for Baltimore County, directing the sale of certain land for the purpose of partition. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*George G. Hooper*, for the appellant.

*D. G. McIntosh*, for the appellees.

BRYAN, J., delivered the opinion of the Court.

A bill in equity was filed by Eleanor Taylor, widow, and Thomas R. Jenifer and his wife, against Charles J. Moore and his wife, Robert Moore and Charles J. Moore, trustees, and Carl Vietor. Robert Moore was dead at the time the bill was filed. The object of the bill was to obtain a decree for the sale of certain real estate for the purpose of partition among the heirs of Ann Moore, deceased, who was the mother of Mrs. Taylor and Mrs. Jenifer and of Charles J. Moore. A decree for sale was passed by the Court, and Charles J. Moore appealed. ·

We will state the facts as they appear to us from the pleadings and proofs. Mrs. Ann Moore died in eighteen hundred and seventy-three, seized and possessed in fee-simple of certain real estate in Baltimore County. She left surviving her Robert, her husband, and two daughters, Mrs. Taylor and Mrs. Jenifer, and two sons, William H. and Charles J. On the second day of April, eighteen hundred and eighty-eight, William conveyed all of his property, real and personal, to Robert, his father, and Charles, his brother, in trust, to pay the whole income of the property to himself during his natural life, and upon his death to hold all of the property upon such trusts as he should appoint by his last will and testament, and in default of such

appointment to distribute the "principal sum thereof" to his two sisters and his brother, share and share alike. William died intestate, without issue and unmarried, on the fifth day of the same month. Robert, the husband of Mrs. Ann Moore, died in the year eighteen hundred and ninety-one. On the second day of May, eighteen hundred and ninety-three, Mrs. Taylor, Mrs. Jenifer and her husband, Charles Moore and his wife, executed an instrument of writing under their respective hands and seals, whereby it was agreed that for the purpose of avoiding the expense and costs of a partition suit, the real estate in question should be sold in Towson, at the Court-house door, on certain prescribed terms, and after a specified notice, and that the sale should be made by William M. Risteau, as auctioneer. The sale was made at the appointed time after due notice, as required, and John Longnecker became the purchaser, as agent for Mrs Jenifer and Mrs. Taylor, being appointed by them, with the sanction of Mr. Jenifer, the husband. The auctioneer made at the time a written memorandum of the sale.

The written agreement, which the heirs made for a sale by auction, was valid and competent. A question is made as to the binding effect of the purchase upon Mrs. Jenifer, she being a married woman. The fourth section of the Statute of Frauds enacts that contracts for the sale of land shall be in writing, and "signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized." A marked difference is to be noted between the language thus used, and that of the first section, in which it is required that certain estates in land shall be made or created by writing "signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing." The text-books and decided cases have directed particular attention to this difference between the two sections and to its necessary consequences. *Browne on the Statute of Frauds* states the result of the cases to be that the agent for signing may in all the cases enumerated

in the fourth section be appointed without writing, unless the memorandum to be signed is to be sealed also; in which case the power must be conferred by an instrument of equal dignity. Section 370 *a.* And when at a public sale land is knocked down to the highest bidder by the auctioneer, it is conclusively settled that he becomes the agent of both buyer and seller, and that the memorandum required by the Statute of Frauds is complete when he makes in his book an entry of the purchaser's name and the terms of sale· *Singstack* v. *Harding,* 4 Harris & Johnson, 186; *Ijams* v. *Hoffman,* 1 Md. 423; *Browne on Statute of Frauds,* section 351. Longnecker was the agent of Mrs. Jenifer and Mrs. Taylor to bid for this land, appointed with the sanction of Mrs. Jenifer's husband; he bid it off for them, and the memorandum in writing was duly made by the auctioneer. Nothing more is required to make the contract of sale binding under the Statute of Frauds.

It is, however, argued that the title to the land was not good. It appears that in September, eighteen hundred and ninety-one, John Moore and Charles J. Moore, being partners in business, conveyed all their property to Carl Vietor, in trust, for the benefit of their creditors; and that on the tenth of September, eighteen hundred and ninety-two, the Circuit Court of Baltimore City passed an order discharging the trustee and directing him to reconvey the trust property to the grantors free from the trusts created by the deed to him. After the passage of this order in November, eighteen hundred and ninety-two, Hilton and Sibbey filed a claim in the cause; on the thirty-first of July, eighteen hundred and ninety-three, Hilton and Sibbey dismissed their claims, and on the same day the Court passed an order confirming the previous order of reconveyance, which had been passed in September, eighteen hundred and ninety-two. On the first day of August, eighteen hundred and ninety-three, Carl Vietor reconveyed the trust property to John and Charles Moore, and on the seventh day of the same month the deed was recorded in Baltimore County.

The operation and effect of the deed of trust were entirely nullified by the Court's order of September, eighteen hundred and ninety-two ; this order could not be suspended or affected by the filing of a claim by Hilton and Sibbey, nor by anything less than the Court's own action.   But the confirmation of the order and the recording of the deed from the trustee are certainly sufficient to set at rest every question under this head.   The recording of the deed invested Charles Moore with the legal title to his property, but the whole beneficial interest was already held by him under the Court's order of September, eighteen hundred and ninety-two.

It is also said that as no letters of administration have been granted on the estate of William Moore, that any creditors which he may have had at the time of his death will have a lien on the portion of the land which was conveyed by his deed to Robert and Charles Moore.   It must be noticed that there is no proof whatever that William Moore was indebted to anybody at the time of his death. It is merely a surmise that such might be the case.   But supposing that he were indebted, this deed conveying his property has been recorded among the land records of the county for nearly seven years, and no claim has been made by anyone alleging himself to be a creditor.   Under these circumstances any *bona fide* purchaser of the land from William Moore's grantees without notice of any indebtedness would have a most complete and meritorious defence against any creditor.   The case is stronger in reference to any supposed indebtedness by Mrs. Ann Moore.   She died in April, eighteen hundred and seventy-three.   According to the law then existing, her surviving husband was entitled to act as her administrator without taking out letters.   *Code of 1860*, Article 93, section 32 ; *Willis* v. *Jones*, 42 Md. 422 ; *Mobray* v. *Leckie*, 42 Md. 474.   Subsequent legislation has made a change in the law in this respect.   Acts of 1878, chapter 268 ; 1882, chapter 477.   If Mrs. Moore had any creditors, their resort in the first instance was against her

husband, who occupied a position similar to that of administrator. During all this long interval no creditors have appeared. If they should now appear, they could establish no claim against a *bona fide* purchaser from her heirs, without notice of their claims.

Our conclusion is that the title to the land in question is good, and that Mrs. Jenifer and Mrs. Taylor are bound by their purchase at the auction sale, and that they are responsible for the amount at which it was sold to them. Consequently the proceedings for sale for the purpose of partition cannot be maintained and the decree must be reversed and the bill dismissed.

*Decree reversed and bill dismissed*
*with costs in both Courts.*

(Decided June 19th, 1895.)

---

A motion for re-argument was subsequently made, and in disposing of the same,

BRYAN, J., delivered the opinion of the Court.

A motion for a re-argument has been filed on the ground that one of the appellees has died since the hearing, and before the decision.

The question is settled by Article 5, section 75, of the Code. It is there enacted: "When a case is under rule-argument in the Court of Appeals, and a party shall die having an attorney in Court, the Court of Appeals shall give judgment to have the same effect as if the party were alive, &c., &c." The section is a codification of the Act of 1806, chapter 90, section 11. Uuder the present Constitution all causes stand for argument at the first term after the transmission of the record, and therefore the necessity for a rule-

argument no longer exists. In point of fact, such rules are never laid. In the present case the death occurred not only after it stood for argument, but after the argument had been heard and the cause submitted to the Court for decision.

The motion must be overruled.

*Motion overruled.*

(Decided December 13th, 1895.)