ROMANI *v.* HARRIS t/a Harris Auction Galleries

[No. 302, September Term, 1968.]

*Decided November 5, 1969.*

The cause was argued before HAMMOND, C. J., MARBURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Theodore Losin,* with whom were *Sidney A. Needle* and *Needle, Willen, & Needle* on the brief, for appellant.

*William L. Putzel*, with whom were *Putzel, Putzel &
Danoff* on the brief, for appellee.

HAMMOND, C. J., delivered the majority opinion of the
Court. MARBURY and MCWILLIAMS, JJ., dissent. Dissent-
ing opinion by MCWILLIAMS, J. in which MARBURY, J.
concurs at p. 398 infra.

Harris, the plaintiff below and the appellee here, is an
auctioneer who sued Mary D. Romani, defendant below
and appellant here. Harris held a catalogue auction sale
at his gallery on June 3, 1966. Mrs. Romani was the suc-
cessful bidder on a number of portraits and other pic-
tures and did not pay for them. Harris sued her on his
own behalf to recover the amount of $4,600 she had of-
fered as the last bidder for a portrait he owned person-
ally—described in the catalogue as a portrait by Thomas
Sully—and on behalf of seven other owners to recover
an additional $2,210, the purchase prices of items of
theirs she had successfully bid on.[1] Harris was given a
judgment for the full amount sued for (less credits con-
ceded by Harris) by Judge Grady, sitting without a jury.

Mrs. Romani's defenses were and are that she was de-
frauded because the portrait was not by Sully, that the
requirements of Code (1964 Repl. Vol.), Art. 95B (Uni-
form Commercial Code), § 2-201 (1), were not met and
therefore the Statute of Frauds bars Harris from enforc-
ing the liability he says she has and that the $100 de-
posit Harris says she made prior to the sale—she denied
making any deposit—would not otherwise gratify the
statute.

Judge Grady's opinion well points out the background
of the controversy as to the Sully portrait. He said:

"The Plaintiff, a licensed and bonded auc-
tioneer, advertised a public auction to be held

---

1. The portrait was of John Vanderlyn 1775-1852, himself a
minor portraitist. Harris in the catalogue recited that the paint-
ing was one of the works of Thomas Sully 1783-1872. Sully, called
by some "The Sir Thomas Lawrence of America," painted some
2700 pictures.

on Friday, June 3, 1966, at his auction galleries at 875 North Howard Street in Baltimore. The various items to be sold were described in a catalog prepared before the sale and distributed widely at least ten days before the date of the sale. The Defendant has been dealing in antiques for about twelve years and at the time of the auction maintained a shop a few doors from the Plaintiff's auction galleries. For this reason Plaintiff testified that he knew the Defendant and that she had made purchases at previous auctions conducted by him. The evidence is undisputed that the Defendant attended the sale and was the high bidder on several articles during the course of the sale. The disputed matter concerned the purchase of an oil painting (catalog item No. 152, see Plaintiff's Exhibit No. 1) which the Plaintiff contends was sold to the Defendant at her bid of $4,600. The Defendant contends that she was not the high bidder, since her last bid was $4,500 and some other bidder had submitted the bid of $4,600.

"The Plaintiff testified that before the sale began he read to the prospective bidders the conditions of sale printed on the inside cover of the catalog (see Plaintiff's Exhibit No. 1). He testified that the sale was conducted by him and that a record of each sale was made by his clerk on a list prepared before the sale and upon which the clerk recorded the sale of each item identifying the purchaser and the purchase price. Each prospective bidder was issued a paddle bearing a number which the bidder would hold up during the bidding so that the identity of the purchaser could be recorded. It is undisputed that the Defendant's number was 170. The clerk's list was submitted in evidence as Plaintiff's Exhibit No. 3 and bears the nota-

tion that item No. 152 was sold for $4,600 to No. 170, the Defendant. The Plaintiff produced an independent witness, Dr. Harold Boslow, who was in attendance at the sale and who testified that the defendant unquestionably was the final bidder on the item in question. The Court finds as a fact from the evidence that the Defendant was the final high bidder on item 152 and that she purchased this item for the amount of $4,600.

"The Plaintiff testified that the morning following the sale she requested the Plaintiff to remove the painting from his gallery so that she could have it checked by art experts but that he had refused to permit this.

"The testimony was to the effect that the first notice to the Plaintiff of any dispute occurred several days after the sale at which time the Defendant had received her bill listing fifteen items which she had purchased at the sale, including item 152, and for which the total price was $7,130. At this time the Defendant questioned the authenticity of the portrait. The Defendant in her affidavit in support of her answer to the Plaintiff's motion for summary judgment filed herein, in addition to the defense that she was not the final bidder on item in question, alleged that this item was misrepresented for the reason that item No. 152 was not an authentic portrait by Thomas Sully as stated in the sale catalog. The Defendant produced no evidence at the trial to support her allegation that the portrait was not authentic. The law is clear that the burden of proving fraud rests on the party alleging it. See 11 M.L.E., Fraud, Section 23, at page 139 and cases cited therein. In the absence of evidence to support the claim that the portrait in question was not authentic,

the Defendant's contention in this regard is without merit.

"At the trial the Defendant made the argument that the Plaintiff's evidence of the sale of the portrait did not satisfy the requirements of the Statute of Frauds as set forth in Article 95B, Section 2-201, Annotated Code of Maryland. In this connection the Defendant testified that as the bidding on the portrait in question was drawing to a close, she learned from another person that the portrait in question belonged to the Plaintiff. She further stated that information was given to her that the opposing bidder or bidders were not making bona fide bids but were running the price up against her. Her testimony seemed to be to the effect that upon obtaining this information she made no further bid. Having found from the evidence that the Defendant did make the final bid, it would appear that this information referred to above was made known to her after the final bid had been made.

"The Defendant contends that since the item being auctioned was the property of the auctioneer, the auctioneer cannot execute a valid memorandum of sale under the Statute of Frauds. This proposition does not appear to be recognized in Maryland. See 11 M.L.E., Statute of Frauds, Section 48, page 177, wherein this language appears:

'An auctioneer is the agent of both the buyer and seller for the purpose of making and signing a memorandum of the contract of sale, and his entry of the buyer's name on a book or memorandum containing the particulars of the contract is a sufficient signing within the Statute of Frauds.'

"Also, Article 95B, Section 2-202 (a) contains a provision that the memorandum of sale may

be explained or supplemented 'by course of deal-
ing or usage of trade.' The Plaintiff produced
evidence to the effect that in the Baltimore area
owners of items being auctioned in a catalog
sale are not identified and that in non-catalog
auctions auctioneers frequently sell their own
goods without the auctioneer identifying him-
self as the owner of the goods. In addition, the
third contention of sale printed in the catalog
of this sale, Plaintiff's Exhibit 1, is as follows:

> 'The record of sale kept by the auctioneer
> and bookkeeper must be taken by the buyer
> as absolute and final in all disputes.'

The Court finds that the Defendant, by her par-
ticipation in the sale, agreed to accept the auc-
tioneer's memorandum and cannot now be heard
to raise her present objection. For these reasons
the Court finds that the Plaintiff's proof of the
sale in question to the Defendant does satisfy
the Statute of Frauds."

For a reason other than those relied on by Judge
Grady, we agree that the memorandum of Mrs. Romani's
bid made by Turner, the clerk at the sale, did meet the
required specifications of Art. 95B of the Code. Both
sides agree, and understandably, since there can be no
doubt that it is so, that an auctioneer who sells goods he
does not himself own can, as the agent of the buyer by
custom, make a memorandum of the sale that will. grat-
ify the statute and bind the buyer as the party to be
charged. The buyer's bid made in the open, regular
course of the auction is treated as authorizing the auc-
tioneer (or his clerk) openly to sign the buyer's name
during the auction. *Ijams v. Hoffman,* 1 Md. 423; *Bat-
turs v. Sellers & Patterson,* 5 H. & J. 117; *Singstack's
Ex'rs v. Harding,* 4 H. & J. 186; J. Bateman, *Law of
Auctions* 20; 7 Am.Jur.2d *Auctions and Auctioneers* §
36. The decisive question in the instant case is whether
the clerk of an owner-auctioneer can be authorized in

the same fashion to bindingly sign the buyer's name to the record of the sale.

One party to a transaction generally can be authorized to act as agent for the other party. An unvarying and unvariable exception to that general rule is that one party cannot orally authorize the other party to sign his name for the purpose of satisfying the requirements of the Statute of Frauds. Hence in the present case Mrs. Romani could not have authorized Harris to sign her name so as to bind her for the purchase price of the Sully portrait under the Statute of Frauds because Harris as the owner of the portrait was the other party to the transaction. The exception goes no further. It is the old and prevailing rule of law that the disability of the principal to sign the other party's name under the statute does not carry over to his agent and, therefore, the agent of party A can be authorized by party B to sign B's name to a memorandum which will bind B under the statute.

1 Williston *Sales* (1948) § 115, p. 337, says:

> "The authority of the auctioneer to sign a memorandum extends to his clerk; and the clerk is not subject to the limitation upon the auctioneer, for if the auctioneer's goods are sold to a third person, the clerk can bind both the auctioneer and the buyer by his signature to the memorandum."

The same language is repeated in 4 Williston *Contracts* (3d Ed.) (Jaeger, 1961) § 588, pp. 187-188. Restatement *Contracts* § 212 says:

> "* * * the auctioneer or his clerk, if not interested in the subject matter of the sale otherwise than in his function as auctioneer *or auctioneer's clerk*, is authorized to make and sign a memorandum on behalf of both buyer and seller, immediately after the sale." (Emphasis added.)

1 Restatement *Agency* 2d § 24 says:

> "One party to a transaction can be authorized to act as agent for the other party thereto, except for the purpose of satisfying the requirements of the Statute of Frauds,"

and illustrates in Comment b:

> "A party to a transaction within the Statute of Frauds [here a buyer] cannot orally confer power upon the other party to the transaction [here an owner-auctioneer] to sign effectively a memorandum required to satisfy the provisions of the Statute. A party [the buyer at auction] can, however, orally confer upon the agent of the other party [the clerk to the auctioneer] so to do."

The leading American case is *Johnson & Miller v. Buck*, 35 N.J. L.Rep. 338, 342, which held:

> "The agent, to make the signature, must be some third person. Neither of the contracting parties can be agent for the other. A signature by the vendor or purchaser, of the name of the other, is not a sufficient signing. [Citing cases] Where the suit is brought by the auctioneer himself [as is presently the case], *for the purposes of that suit, he is regarded as a contracting party, and a signing by him of the name of the defendant is insufficient. Fairbrother v. Simons*, 5 B. & Ald. 333. But the reason of this disqualification to be the agent of the purchaser, for the purpose of signing, does not apply to the clerk of the auctioneer. When the bids are announced, and the property struck off, the clerk is the agent of both parties to record the sales and affix the signature of the purchasers, although he is employed to act as clerk by the auctioneer. No reason for his disability to act

as agent for the purpose of making the signature of the purchaser, as between the latter and the auctioneer, can be adduced, which will not operate equally to exclude the auctioneer, where the litigation is directly between the vendor and the purchaser. The question, in every case, is one of fact, whether the person by whom the signature has been made was an agent lawfully authorized to make the same. Auctioneers and brokers, by virtue of their business, by the usages of trade, are assumed to have such authority; and where the auctioneer's clerk, or a volunteer, acts openly at a sale in entering the successful bids, as they are publicly announced, his authority to act for the purchaser in the premises is established." (Emphasis added.)

The Supreme Court of New Jersey in *Borough of Lodi v. Fravi Realty Co.* (1950), 71 A. 2d 333, 335, followed *Johnson & Miller v. Buck, supra,* saying:

"Specifically we accept the contention that Cavallo, in addition to representing the borough [the seller], also acted as clerk to the auctioneer; and from this it follows that as clerk to the auctioneer he was qualified to bind the seller and the buyer by a suitable writing."

*Johnson & Miller v. Buck* followed the English law. *See Bird v. Boulter,* 4 B. & Ad. 442, 110 Eng. Repr. 522 (1833).

The Maryland cases indicate concurrence with the general law. *In Reckord Mfg. Co. v. Massey,* 151 Md. 348, 352-353, Judge Parke for the Court held that a salesman could bind a buyer under the statute by putting the buyer's name on a memorandum of sale even on an oral authorization to do so from the buyer, but on the facts found no such authorization, express or implied, saying:

"And there is nothing in the nature of the salesman's occupation which conferred upon

him the authority to sign for both the buyer and seller as in the case of an auctioneer or broker who become indifferent middlemen when a sale is made."

In *Stoddert v. Vestry*, 2 G. & J. 227, the vestry of a church sued for the price of a pew which Stoddert had bought at an auction called by one of the vestrymen. The Court held that the vestryman-auctioneer, although the agent of the seller, could sign a memorandum that would bind the buyer.

In the case before us there was evidence fully sufficient to support Judge Grady's findings that fraud had not been shown and that as a fact Mrs. Romani was the final high bidder on the Sully portrait in the sum of $4,-600. The sufficiency of the memorandum is not challenged and Turner, the owner-auctioneer's clerk, had standing to affix Mrs. Romani's name as the buyer of the portrait so as to bind her under the statute as a party to be charged. We do not reach the question of the making or effect, if made, of the deposit.

*Judgment affirmed, with costs.*

McWILLIAMS, J., dissenting:

I cannot agree that the requirements of the Statute of Frauds, Code, Art. 95B, § 2-201 (1) (1964 Repl. Vol.), were satisfied. I would modify the decision of the court below by deducting from the total award the $4,600 purchase price of the painting.

It is settled that the provisions of the statute apply to auction sales. And it is generally held, as the majority points out, that the auctioneer or his clerk is the agent of both seller and purchaser for the limited purpose of making and signing a memorandum sufficient to satisfy the statute. *See* 28 A.L.R. 1114, 1118 (1924); J. Bateman, *Law of Auctions* 20 (1883); 1 S. Williston, *Sales* § 115 (1948); 7 Am.Jur.2d, *Auctions and Auctioneers* § 36 (1963); Restatement (Second) of Contracts

§ 211, comment *b* (Tent. Draft No. 4, 1969). The dual role of the auctioneer has long been recognized by this Court. *E.g., Singstack's Ex'rs v. Harding,* 4 Har. & J. 186 (1816).

Mrs. Romani does not argue that the rule noted above has not been widely accepted. Her argument is that the auctioneer's proprietary interest in the painting precludes the application of the general rule. The auctioneer's position as a dual agent, she continues, is based upon the premise that he has no interest in the subject matter of the sale and would therefore have no motive fraudulently to bind the purchaser. The reason for the rule, she concludes, fails where, as in this case, the auctioneer is, in fact, the owner of the painting.

In his treatise on the law of auctions Mr. Bateman states that "[i]f the auctioneer is himself the vendor, or if he has himself an interest in the contract of sale, besides being a nominal party to it, he cannot bind the purchaser by signing a memorandum in writing to take the case out of the statute of frauds * * *." J. Bateman, *supra* at 157 n 1. Professor Williston points out that:

> "If the auctioneer is himself interested as a seller, he cannot by his signature bind the buyer, *even though the buyer was aware of the auctioneer's personal interest and expressly assented to his signing the memorandum.* The difficulty is insuperable of one party to a transaction signing a memorandum as agent for the other." 1 S. Williston, *supra* § 115 at 337 (emphasis added).

7 Am.Jur.2d, *supra* § 39 at 253-54, indicates that:

> "The rule that the auctioneer may bind the purchaser in making the memorandum of sale does not apply where the auctioneer himself is the owner of the goods being sold. The chief reason in support of the rule that he may be the agent of the purchaser to bind him by his

memorandum is that he is supposed to be a disinterested person, having no motive to mistake the bargain and entitled to the confidence of the purchaser. This reason fails when he is a party to the contract and a party in interest also; the rule accordingly is that where the auctioneer himself is the owner of the goods being sold, he has no implied authority to make the memorandum of sale on behalf of the purchaser."

See 1 H. Reed, *Law of the Statute of Frauds* § 319 at 498 (1884).

The cases in this country in which this question has been raised uniformly support the limitation placed on the auctioneer's dual role. In the oft cited case of *Bent v. Cobb*, 75 Mass. 397 (1897), the Massachusetts court held that the pecuniary and contractual interest of a guardian who acted as auctioneer in selling land of his ward would preclude his executing a memorandum in writing to bind the purchaser so as to satisfy the requirements of the statute. The court noted the dual agent rule applicable to auctioneers but pointed out that:

"\* \* \* this rule is not applicable to cases where the auctioneer is also himself the vendor. The great mischief intended to be prevented by the statute would still exist, if one party to a contract could make a memorandum of it which would absolutely bind the other. If such were its true construction, it would be a feeble security against fraud; or rather it would open a door for its easy commission. A vendor could fasten his own terms on his vendee. If it was a written contract binding on the purchaser, he could not show by parol evidence that the terms of the bargain were incorrectly or imperfectly stated. He could not vary or alter it by the testimony of those present at the sale. The publicity of a sale by auction would be no

safeguard against a false statement of the terms of sale, made in the written memorandum signed by a party acting in the double capacity of auctioneer and vendor. The chief reason in support of the rule, that an auctioneer, acting solely as such, may be the agent of both parties to bind them by his memorandum, is that he is supposed to be a disinterested person, having no motive to misstate the bargain, and entitled equally to the confidence of both parties. But this reason fails when he is the party to the contract and the party in interest also. The purpose of the statute was, that a contract should not be binding unless it was in writing and signed by the party himself to be charged thereby, or by some third person in his behalf, not a party to the contract, who might impartially note its contents." *Id.* at 397-98.

*See Tull v. David,* 45 Mo. 444 (1870) ; *Smith v. Harrigan,* 15 N.Y.S. 852, 853 (Sup. Ct. 1891).

So far the majority and I have not drawn swords. I cannot agree with the majority, however, that the auctioneer's clerk should be permitted to do what the auctioneer, acting alone, cannot do. There would seem to be no sound reason to assume that a clerk, under the direction and control of an auctioneer who has a proprietary interest in the subject matter of the sale, will act as a disinterested third person for the purpose of binding the purchaser by executing a memorandum. Nor do the authorities cited by the Chief Judge compel me to reach a contrary conclusion.

As noted by the majority the "leading American case" of *Johnson v. Buck,* 35 N.J.L. 338 (1872), purports to follow English law. Therefore, I think that a brief discussion of the law relied upon by the New Jersey court is warranted.

The leading English cases are *Farebrother v. Simmons,* 7 Eng. Rep. 120 (K.B. 1822) and *Bird v. Boulter,*

4 B. & Ad. 443 (K.B. 1833). In *Farebrother* an action was brought by the auctioneer against the purchaser of goods at an auction sale. It does not appear in that case that the auctioneer was also the owner of the goods sold, as in the case at bar. The purchaser, nevertheless, defended on the ground that *the auctioneer's* notation of the purchaser's name was not sufficient to satisfy the statute. The court agreed. It theorized that the auctioneer's role as plaintiff in the suit made him one of the contracting parties. It therefore applied the universally accepted rule that one contracting party cannot act as the agent for the other for the purpose of executing a memorandum sufficient to satisfy the statute. In his opinion, Chief Judge Abbott indicated that

> "[i]n general, an auctioneer may be considered as the agent and witness of both parties. But the difficulty arises, in this case, from the auctioneer suing as one of the contracting parties. The case of *Wright v. Dannah* seems to me to be in point, and fortifies the conclusion at which I have arrived, viz. that the agent contemplated by the legislature, who is to bind a defendant by his signature, must be some third person, and not the other contracting party upon the record." *Id.*

As I see it, the court in *Farebrother* did not allow the auctioneer to act as dual agent because it assumed, erroneously it seems, that the mere instigating of an action by the auctioneer gives him too great an interest to allow him to execute the memorandum.

The decision in *Farebrother* was followed by the case of *Bird v. Boulter, supra.* In that case the auctioneer brought an action to enforce the contract of sale against the successful bidder. It is important to note that the auctioneer was *not* the owner of the goods in question. *Id.* at 4 B. & Ad. 443. It is also clear that the memorandum was executed by the auctioneer's clerk. The defendant, in reliance upon *Farebrother,* raised the de-

fense that the statute was not satisfied. The plaintiff argued that it should not make any difference whether the auctioneer or the owner brought the action:

> "* * * the defendant is either bound by the contract originally, or not bound: if he is bound, it does not matter by whom the action is brought, so that it is a party entitled to enforce the contract by action; and this was the view taken by the learned Judge at the trial." *Id.* at 444.

The court agreed with the plaintiff as to the outcome but chose not to follow his rationale. According to the court, *Farebrother* was not controlling inasmuch as, in that case, it was the auctioneer who executed the memorandum and brought the action, while, in the case before it, the clerk executed the memorandum. The following excerpt from the opinion of Judge Littledale illustrates his concern as to the applicability of the *Farebrother* decision and the approach which he chose to follow:

> "An auctioneer is enabled by law to sue the purchaser, but, according to the rule insisted upon for the defendant, an action of this kind could not be maintained by the auctioneer. I think that a clerk employed as *Pitt* was in this case, must, in an action brought by the auctioneer, be considered as his agent for the purpose of taking down the names, and also as the agent of the several persons in the room for the same purpose, and to prevent the necessity of each purchaser coming to the table to make the entry for himself." *Id.* at 447.

It therefore appears that the precise question raised by Mrs. Romani has not been resolved by the English cases. There are no English decisions which indicate that an owner-auctioneer's clerk can execute a memorandum although the owner-auctioneer cannot. The distinction drawn by the court in *Bird v. Boulter, supra,*

was made in the context of prior decisions which promulgated the strict rule that the nonowner-auctioneer who brings an action against the purchaser cannot also act as the agent of that purchaser and execute a memorandum sufficient to satisfy the statute, inasmuch as his status as the "contracting party on the record" gives to him too great an interest to act impartially.

Nor does *Johnson v. Buck, supra,* support the distinction drawn by the majority. It is particularly important to note that the auctioneer in *Johnson* was not also the owner of the goods. Moreover, the court's decision, as noted, was predicated upon the rulings in the earlier English cases discussed above.

The conclusion of Professor Williston which is referred to by the majority appears to be unfounded. A careful examination of his treatise will reveal that the decision in *Johnson v. Buck, supra,* was relied upon to support his belief that the limitation placed upon the owner-auctioneer does not apply to his clerk. No further comment should be necessary. *See* 1 S. Williston, *supra,* § 116 at 336 n 11.

The rules set forth in the Restatements cited by the Chief Judge do not appear to be applicable where the auctioneer is also the owner.

Moreover it appears that the majority's decision is not supported by the Maryland cases. We are not bound by the *obiter dicta* found in the opinion of our predecessors in *Stoddert v. The Vestry of Port Tobacco Parish,* 2 Gill & J. 227 (1830). In that case it appeared that while the plaintiff-auctioneer executed a memorandum at the time of the sale, he could not produce it in the court below. Therefore, the plaintiff attempted to show by parol evidence the terms of the sale. Although the defendant objected, the court below determined that the parol evidence was admissible. The defendant appealed and this Court reversed. Judge Archer, for the Court, *held* that "[t]he parol evidence offered of a sale of a pew was inadmissible, because it would have established a contract different from that contained in the

lost memorandum. No parol evidence is admissible to add to, or vary the memorandum." *Id.* at 229. Also raised by the defendant on appeal was the defense, as noted by the majority, that the statute had not been satisfied. Although Judge Archer chose to consider this point (and another as well), it is clear that the remainder of his opinion has little relevance to the Court's actual disposition of the appeal.

On the other hand it was squarely held in *Ijams v. Hoffman,* 1 Md. 423 (1851), that the clerk of the vendor of land could not assist the auctioneer and execute a memorandum sufficient to satisfy the statute. In *Ijams,* the vendor of land brought an action to recover the price bid by the defendant at an auction sale. It appeared from the record that the party who made the memorandum of sale was acting as the plaintiff's clerk and not the auctioneer's. Chief Judge LeGrand, for the Court, pointed out that:

> "For the convenience of trade, the courts have recognized the *auctioneer* as the agent of both parties, and the making by him of a memorandum of sale, has been held a sufficient compliance with the statute, to bind the purchaser; *but it has never been held that the clerk of any other person than the auctioneer, without the assent of the purchaser, can bind him by any memorandum.*" *Id.* at 435 (emphasis added).

The reason for not permitting the vendor's clerk to execute a memorandum which would bind the successful bidder under the statute was set forth by the Supreme Court of Georgia in *Howell v. Shewell,* 96 Ga. 454, 23 S. E. 310 (1895):

> "Where the owner employs an agent to sell property, and this agent, in turn engages the services of an auctioneer to conduct the sale at public outcry, *the agent should no more be permitted to act as clerk for the auctioneer than*

*the owner himself. Such agent represents the owner, and no one else, and is, in perhaps a modified degree, under the same kind of temptation which might induce the owner himself to make a false entry. At any rate, the agent is certainly not, as to the matter in hand, disinterested, and no one who is not entirely so should be permitted to act as the auctioneer's clerk." Id.* at 23 S. E. 310, 311 (emphasis added).

I think it can be most reasonably inferred that the *Ijams* decision would have been the same if the clerk had been in the employ of the owner-auctioneer. In either case he would most likely have been precluded from executing a binding memorandum inasmuch as his interest in the sale would have been too great to allow him to act impartially.

Rather than indicating that the disability imposed upon the auctioneer does not extend to his clerk, the decision in *Reckord Mfg. Co. v. Massey*, 151 Md. 348 (1926), appears to indicate to the contrary. In that case the plaintiff's traveling salesman secured an oral order from the defendant for a quantity of cotton seed meal. Subsequently the salesman mailed the buyer a letter of confirmation. When the defendant refused to accept delivery of the goods the action was brought. The buyer raised the defense that a memorandum was not executed to bind him under the statute. The plaintiff asserted that the letter of confirmation sufficed. This Court agreed with the buyer. Judge Parke for the Court pointed out that the defendant would be bound if the salesman could be deemed his authorized agent (citing the auction cases). He further noted however that "[a] travelling salesman is presumably not authorized by one who buys of him to sign a contract for the customer as purchaser." *Id.* at 352. He went on to say that

"* * * there was nothing in the nature of the salesman's occupation which conferred upon him the authority to sign for both the seller

and the buyer, as in the case of an auctioneer or a broker, who become indifferent middlemen when the sale is made. *Moore v. Taylor,* 81 Md. 644, 677; *Williams v. Woods,* 16 Md. 220; *Ijams v. Hoffman,* 1 Md. 423, 436; *Austin, Nichols & Co. v. Lingo,* 136 Md. 183, 190." *Id.* at 352-53.

The cases cited by Judge Parke were those in which the auctioneer was not also the owner of the goods sold. It therefore appears that the traveling salesman was prevented from executing a binding memorandum *ex parte* because he was the employee of the vendor and could not be considered as an indifferent middleman. His authority to execute a memorandum for the buyer, like that of his employer, had to be actual and could not be inherent. Likewise, I think that the authority of a clerk to execute a memorandum, like that of his employer, the owner-auctioneer, must also be actual.

Mr. Browne, in his treatise on the statute of frauds, fortifies my position. During his discussion of the English court's decision in *Bird v. Boulter, supra,* he points out that

"* * * though the entries at an auction sale should be really made by the clerk of the auctioneer, still, in this view [of the *Bird* court], the auctioneer could read it in evidence upon an action brought by himself. *If the auctioneer were in any just sense a party in interest, or a party to the contract, it would be hard to admit the signature of his clerk as competent evidence, his own not being so.*" C. Browne, *Statute of Frauds* § 368 at 499 (5th ed. 1897) (emphasis added).

Harris also argues that the alleged $100 deposit was sufficient to satisfy the part payment exception to the statute, Code, Art. 95B, § 2-201 (3) (c) (1964 Repl. Vol.). Although the majority did not have to reach this

question in view of its decision that the requirements of § 2-201 (1) were satisfied, I shall do so here since I cannot agree with the majority's conclusion. It is apparent that if the appellee satisfied the requirements of the part payment exception then my dissent is in vain. It seems to be settled that a deposit made *after* the close of the bidding is evidence that a contract has been reached. *Montgomery v. Pacific Coast Line Bureau,* 94 Cal. 284, 29 P. 640 (1892); *Ryan v. Gilbert,* 320 Mass. 682, 71 N.E.2d 219 (1947); 7 C.J.S. *Auctions and Auctioneers* § 7 (f) at 1258 (1937); 7 Am.Jur.2d *Auctions and Auctioneers* § 34 at 250 (1963). The effect of a deposit made *before* the auction is far from settled. It may be nothing more than an admission fee. It may be simply a charge for the catalogue, stiff enough to keep out triflers. It may be refundable in whole or in part. I do not attach any special significance to the condition of sale which provides that "deposits shall apply to all purchases made at this sale and not to any one particular lot," especially in light of another condition which requires a "cash deposit of *not less* than 10% of the purchase price." (Emphasis added.) It is at once obvious that the amount of the deposit cannot be determined until after the item has been struck off to the successful bidder and it seems to me that this is the kind of deposit which must be made if the requirements of the statute are to be met. In any event the evidence does not establish to my satisfaction that Mrs. Romani deposited any money. Had Judge Grady found as a fact that she had paid $100 on account of the picture I might have difficulty concluding that such a finding was clearly erroneous. Since he did not so find and since I think otherwise it would seem to follow that the requirements of the statute have not been met. *See Hearn v. Ruark,* 148 Md. 354 (1925); *Wenger v. Grummel,* 136 Md. 80 (1920).

My opinion might have been different had the auctioneer, when he reached the catalogue item concerning the Sully portrait, announced to those assembled at the sale that he, Mr. Harris, was offering for sale this item

which was owned by him and had announced also that the highest bidder to whom the item would be sold should immediately approach the clerk's desk and sign a memorandum of sale indicating his intention to be bound as purchaser. I cannot believe that the employment of such a procedure would disrupt the progress of an auction sale. In this case, for example, the Sully portrait was the only item owned by the auctioneer which came within the ambit of the statute of frauds. I do not suggest the prohibition of sales by an owner-auctioneer of his own property. However, I think that the law ought to require an auctioneer to make a full disclosure of his ownership prior to offering the item for sale.

Judge Marbury has authorized me to state that he concurs in the views herein expressed.