JOHNSON & MILLER v. BUCK.

1. An auctioneer may sue, in his own name, a purchaser at an auction sale, to recover his fees, when the conditions expressly stipulate that an auctioneer's fees, of a specified sum, shall be paid to the auctioneer on the day of sale; but his right to recover will depend on the validity of the contract to purchase, as between buyer and seller.
2. Sales by auction are within the statute of frauds.

3. The signature of the purchaser to the conditions of sale made by the auctioneer's clerk, as the bids are publicly announced, is a sufficient signing within the statute of frauds.

4. To satisfy the statute, it is sufficient that the terms of the bargain may be gathered from two or more separate papers, if the signed memorandum contains such reference to the other papers as to make the latter part of the former; but the connection between the signed and unsigned papers cannot be made by parol evidence that they were intended by the parties to be read together, or of facts and circumstances from which such intention may be inferred.

5. Conditions of sale read before the biddings commenced, but not annexed to the catalogue on which the purchasers' names were entered, or referred to therein, cannot be held to supply the terms of sale omitted from the catalogue.

On question reserved.

The plaintiffs were auctioneers and agents of one Underhill, who was the owner of certain lots of land in Rahway. The property was set up at public sale, under the management of the plaintiffs, at Rahway, on the 29th of June, 1869. The conditions of sale were in writing, as follows: " Day of sale, Tuesday, the 29th day of June, 1869; property, two hundred and twenty-eight lots in the city of Rahway, belonging to J. W. Underhill; terms of sale, ten per cent. of the purchase money, and the auctioneers' fees of five dollars on each numbered lot, to be paid to the auctioneers on the day, and for which their receipt will be given." Then followed stipulations for the payment of the residue of the purchase money, and the usual condition for a re-sale on non-compliance by purchasers, and signed, " Johnson & Miller, agents for John W. Underhill."

The defendant being the highest bidder for sixty-six of the lots, the same were struck off to him. The entry of the sales to the defendant was made by a clerk of the auctioneers, in the auctioneers' book. The book, when produced at the trial, contained the following entry: " The property represented by lot numbers, on pages 53 to 62, inclusive, was sold the 29th day of June, 1869, to the purchasers whose names are written below the numbers, on account of J. W. Underhill,

Esq. Johnson & Miller, agents and auctioneers for seller and purchaser." At the top of the 53d page of the auctioneers' book was the following heading, with the entry of the sales to the defendant, in the handwriting of the auctioneers' clerk, in the following form : " Rahway sale, June 29th, page 54. Lots 50, 55, 54, 53 and 22—150, Charles N. Buck, Perth Amboy." And in the same form with respect to the other lots.

Underhill, the owner of the property, was present at the sale, and knew of the defendant's bids, and that the lots in question were struck off to him, and prepared a deed for the same to the defendant, which he was ready to deliver at the time and place named in the conditions. Buck being dissatisfied with the mode in which the sale was conducted, refused to attend and accept the deed.

The action is brought by the plaintiffs to recover the auctioneers' fees of $5 on each numbered lot. At the trial, a motion was made for a non-suit. The judge refused to nonsuit, and instructed the jury to find a special verdict, stating how many lots were struck off on the defendant's bids, reserving a as question of law for the determination of this court, whether, under the facts of this case, the plaintiffs were entitled to recover. The jury found that sixty-six lots were struck off on defendant's bids.

Argued at November Term, 1871, before the CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For plaintiffs, *T. H. Shaffer*.

For defendant, *G. C. Ludlow*.

DEPUE, J. At the trial, and on the argument before this court, the principal grounds for a non-suit were objections to the capacity of the plaintiffs to sue, and the validity of the contract to purchase, by reason of the statute of frauds.

The right of the plaintiffs to sue for these moneys, in an action in their own names, is too clear to be questioned. The beneficial interest in the fees for their services as auctioneers, was exclusively in the plaintiffs. The contract in the conditions was an express contract that payment should be made to them. Although the consideration was the agreement of Underhill to convey, a privity of contract for the payment of these fees was created between the purchaser and the auctioneers, by force of the terms of the agreement. A consideration, moving from a third person, is sufficient to support an express contract to pay.

But, although the formal objection to the plaintiffs' capacity to sue in their own names is not sustained, their right to recover must depend upon the validity of the contract to purchase. The action, though prosecuted in the plaintiffs' names, is really an action to recover part of the purchase money of the sale. If the agreement to purchase would, in an action to compel entire performance, be held invalid, it must be equally incapable of a partial enforcement in this suit. The contract to purchase was an entire contract, and if any part of it is within the statute of frauds, it is invalid *in toto.* *Brown on Frauds*, § 140 ; *Irving* v. *Stone*, 6 *Cush.* 508 ; *Biddell* v. *Leader*, 1 *B. & C.* 327.

Notwithstanding some of the earlier cases to the contrary, it is now well settled that sales by auction are within the statute of frauds. 3 *Parsons on Contracts* 11, note *s.* The contract to purchase is therefore invalid, unless the plaintiffs show a memorandum thereof in writing, signed by the defendant or his agent. The sufficiency of the memorandum produced is disputed with respect to the authority of the clerk to make the defendant's signature, and also for a non-compliance in substance with the requirements of the statute.

In sales of real, as well as personal property, the auctioneer, as between the vendor and purchaser, is the agent of both parties. In an action by either against the other, the signature of the defendant's name made by the auctioneer at the time of the sale, is a sufficient signing within the statute.

*Emerson* v. *Helis*, 2 *Taunt.* 38 ; *White* v. *Procter*, 4 *Ib.* 209 ; *Mews* v. *Carr*, 1 *H. & N.* 484; *Kennys* v. *Procter*, 3 *V. & Beames* 57; *McComb* v. *Wright*, 4 *Johns. C. R.* 659 ; *The First Baptist Church* v. *Bigelow*. 16 *Wend.* 28 ; *Davis* v. *Rowell*, 2 *Pick.* 64 ; *Morton* v. *Dean*, 13 *Met.* 385.

The agent, to make the signature, must be some third person. Neither of the contracting parties can be agent for the other. A signature by the vendor or purchaser, of the name of the other, is not a sufficient signing. *Wright* v. *Dannah*, 2 *Camp.* 203 ; *Raynor* v. *Lithorn*, 2 *C. & P.* 120 ; *Sharman* v. *Brandt*, *L. R.*, 6 *Q. B.* 720 ; *Bent* v. *Copp*, 9 *Gray* 397. Where the suit is brought by the auctioneer himself, for the purposes of that suit, he is regarded as a contracting party, and a signing by him of the name of the defendant is insufficient. *Fairbrother* v. *Simons*, 5 *B. & Ald.* 333. But the reason of this disqualification to be the agent of the purchaser, for the purpose of signing, does not apply to the clerk of the auctioneer. When the bids are announced, and the property struck off, the clerk is the agent of both parties to record the sales and affix the signature of the purchasers, although he is employed to act as clerk by the auctioneer. No reason for his disability to act as agent for the purpose of making the signature of the purchaser, as between the latter and the auctioneer, can be adduced, which will not operate equally to exclude the auctioneer, where the litigation is directly between the vendor and purchaser. The question, in every case, is one of fact, whether the person by whom the signature has been made was an agent lawfully authorized to make the same. Auctioneers and brokers, by virtue of their business, by the usages of trade, are assumed to have such authority ; and where the auctioneer's clerk, or a volunteer, acts openly at a sale in entering the successful bids, as they are publicly announced, his authority to act for the purchaser in the premises is established. Consequently, it has been held that, in a suit in the name of an auctioneer against a purchaser to recover the price of the goods, the signing of the purchaser's name by the clerk of the auctioneer, upon the successful bid

being announced, is a sufficient signing within the statute. *Bird* v. *Boulter*, 4 B. & Ad. 443; *Browne on Frauds*, § 369; *Durrell* v. *Evans*, 1 H. & C. 174–188; *Gill* v. *Bicknell*, 2 Cush. 358.

The objection to the mode of signing is not well taken.

The objection to the substance of the memorandum is more formidable. The memorandum must contain the full terms of the contract—that is, the names of the buyer and seller, the subject of sale, the price, and terms of credit, and the conditions of sale, if any there be. *Story on Sales*, § 467; *McLean* v. *Nicoll*, 7 H. & N. 1024; *Fitzmaurice* v. *Bailey*, 9 H. of L. Cas. 78. In this respect, the entries in the sales-book on which the defendant's signature was made, are radically defective. They contain none of the conditions of sale or the terms of the contract. As they appear in the printed case, they do not express even the price to be paid. To supplement this memorandum, or supply the omission of any of the essential parts of the contract, parol testimony cannot be received. The policy of the statute is to exclude testimony of that uncertain character with respect to transactions within its provisions. It therefore requires the substantive parts of the contract to appear in the writing. To admit parol evidence of any of the terms of the contract with respect to which the memorandum is silent, would open the door to the very mischief the statute was intended to suppress.

The plaintiffs' counsel endeavored to remedy the defects in the memorandum in the sales-book, by recourse to the conditions of sale. Indeed their right to sue is derived exclusively from that source.

The difficulty in the way of resorting to the conditions in aid of the plaintiffs' case, lies in the fact that they cannot be connected with the signed memorandum without violating established principles of evidence with respect to transactions within the statute. The conditions were read at the sale, and contain internal evidence that they were intended for the sale in question, but were not signed by the defendant, and are in

nowise referred to in the memorandum in the sales-book to which his signature was affixed.

It is not essential that the whole bargain be contained in one memorandum. It will be sufficient to satisfy the statute if its terms can be gathered from two or more detached papers, if the signed memorandum contains such reference to the other papers as to make the latter part of the former. The connection between the signed and the unsigned papers cannot be made by parol evidence that they were actually intended by the parties to be read together, or of facts and circumstances from which such intention may be inferred. The connection between them must appear by internal evidence derived from the signed memorandum. Parol testimony will be received only for the purpose of interpretation or explanation, where technical terms are employed, or to identify papers which, by a reference in the signed memorandum, are made parts of it. *Benjamin on Sales* 152 ; 3 *Parsons on Contracts* 17 ; 1 *Smith's Lead. Cas.* 465, notes to *Birkmyr* v. *Darnell ; Boydell* v. *Drummond,* 11 *East* 142 ; *Coles* v. *Trecothick,* 9 *Ves.* 250 ; *Climan* v. *Cooke,* 1 *Sch. & Leffroy* 22 ; *Dobell* v. *Hutchinson,* 3 *A. & E.* 355 ; *Ridgeway* v. *Morton,* 6 *H. of L. Cas.* 237 ; *Parkhurst* v. *Van Cortlandt,* 1 *Johns. C. R.* 273.

Conditions of sale read before the biddings commenced, but not annexed to the catalogue on which the purchasers' names were entered, or referred to therein, cannot be used to supply the terms of sale omitted in the catalogue. *Hinde* v. *Galen,* 7 *East* 538 ; *Kenworthy* v. *Schofield,* 2 *B. & C.* 945. In *Peek* v. *The North Staffordshire Railway Co ,* the subject of connecting separate papers, in order to make out a contract under a statute requiring the contract to be in writing, was fully considered by the English courts, in the construction of the railway and canal traffic act. 17 *and* 18 *Vic., ch.* 31. The act made void all notices by railway companies limiting their liability, and enacted that no special contract respecting the receiving and forwarding of goods should be binding, unless the same be signed by the owner or persons delivering the goods for carriage. The company had issued notices that

they would not be responsible for loss of, or injury to, certain goods, unless they were declared and insured according to their value. The action was by the plaintiff to recover damages for injury to certain goods of the kind specified in the notice (marbles.) It appeared that a copy of the notice had been delivered to the plaintiff, and that he had written to the agent of the company an inquiry as to the rates of insurance of articles of that kind. A correspondence followed on the subject of insurance, and finally the goods were delivered to the company, with an order signed by the plaintiff's agent as follows: "Please to forward the three cases of marble not insured, directed," &c. The court held that this note was not a special contract, under the act, and that parol evidence was not admissible to show that the words, "not insured," were intended to refer to the company's notice. *E. B. & E.* 958; 10 *H. of L.* 472. In moving judgment affirming the decision of the Queen's Bench, which had been reversed in the Exchequer Chamber, Lord Westbury said: "In order to embody in the letter any other document or memorandum, or instrument in writing, so as to make it part of a special contract contained in that letter, the letter must either set out the writing referred to, or so clearly or definitely refer to the writing, that by force of the reference the writing itself becomes part of the instrument which refers to it."

The principle thus stated applies to separate writings in transactions within the statute of frauds.

In this case, the signed memorandum in the sales-book is not a sufficient memorandum within the statute of frauds; and the conditions of sale not being referred to therein, were not admissible in evidence.

Let a judgment of non-suit be entered.

The CHIEF JUSTICE and Justice VAN SYCKEL concurred.

CITED *in Nelson* v. *Smith*, 7 *Vr.* 158.