59 N.J. Super. 496 (1960)
158 A.2d 194
MURRAY KOOBA, PLAINTIFF-APPELLANT,
v.
HENRY P. JACOBITTI, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1959.
Decided February 12, 1960.
*497 Before Judges GAULKIN, SULLIVAN and FOLEY.
Mr. Jack B. Kirsten argued the cause for the appellant.
Mr. Felix Rospond argued the cause for the respondents (Rospond & Rospond, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff appeals from the granting of a summary judgment in favor of defendant partners trading as Newark Jewelry Manufacturing Co. (hereafter called "Newark Jewelry").
*498 Plaintiff's complaint alleges that in 1956, while he was a resident of California, defendants engaged him as a salesman on a commission basis. The complaint then says that in 1958:
"5. Newark Jewelry desired plaintiff to devote part of his time to developing new territories for the sale of their goods, to engage and train additional salesmen, and to supervise the promotion and sale of defendants' products. Pursuant thereto defendants and plaintiffs negotiated a new contract of employment which was to extend for a period of 2 years.
6. In September, 1958, plaintiff was to return to California; shortly before leaving plaintiff informed defendants that unless he was assured of employment with Newark Jewelry pursuant to such a contract of employment as referred to in paragraph 5 hereof, he would not return to New Jersey.
7. Defendants assured plaintiff in September that they were in agreement and that they understood and intended to be bound by the oral agreement between them and a formal contract memorializing their agreement would be prepared and executed upon plaintiff's return from California. Said oral agreement was as follows:
[then followed the alleged terms of the agreement]
8. Relying on said oral agreement, plaintiff leased a home at * * * Metedeconk, New Jersey; said lease to extend from November 1, 1958 to January 1, 1959 * * * and made his home at said address on or about November 15, 1958.
9. During November and December, 1958, plaintiff on several occasions, and particularly on December 20, 1958, plaintiff inquired of defendants about the signing of a formal contract memorializing said oral agreement. On every such occasion defendants or one of them assured plaintiff that he should not be concerned by the delay in formalizing their agreement by a written contract; that they had agreed orally and that the execution of written contracts was just a formality which would be completed as soon as his lawyer had time to prepare the papers.
10. On each of said occasions during November and December, 1958, plaintiff informed defendants or defendants had reason to know that jewelry salesmen were engaged on at least an annual basis prior to the Christmas season at the end of December by reason of the seasonal nature of the jewelry business.
11. On January 24, 1959, defendants presented plaintiff with a written agreement, a copy of which is attached hereto which did not conform to the terms of said oral agreement between them. Plaintiff demanded that said written agreement be corrected to conform to said oral agreement and defendants refused to do so.
12. By reason of the foregoing, plaintiff was discharged and has been unable to obtain other suitable employment under the same or *499 comparable terms, causing him damage and loss of the benefit of his employment contract."
Defendants denied these allegations and, as a separate defense, pleaded the statute of frauds, R.S. 25:1-5 (e). Thereafter defendants moved for summary judgment upon the basis that the statute was a complete bar to the pleaded action. In opposition to that motion plaintiff filed an affidavit which reiterated the substance of the complaint and added that (1) his work for defendants from September 1958 to January 1959 "was done in reliance upon defendants' representations that they intended to be and were in fact bound to the plaintiff by said oral agreement," and (2) his moving expenses were in excess of $1,000, and the lease was to June 1, 1959, instead of January 1 as erroneously stated in the complaint. Then, said plaintiff in the affidavit
"Various unsigned memorandums were exchanged between myself and the defendants concerning the terms of said agreement. Exhibit `A,' a copy of which is attached hereto and made a part hereof, is a memorandum typed by defendant, Harry P. Jacobitti which states the terms of the said agreement. Exhibit `A' was given to me by the defendants to confirm the terms of our oral agreement and to further assure me that they intended to be bound by such agreement, notwithstanding the lack of a formal written, signed contract memorializing such agreement."
The written contract which plaintiff alleged defendants tendered to him on January 24, 1959 (complaint, par. 11) was rejected by plaintiff because (to quote his brief) "Said contract does not conform to said oral agreement between the parties in that it provides * * * that the plaintiff would be obliged to pay to defendants any deficiency of commissions in relation to his drawings."
Plaintiff admits that "During this period defendants paid him a salary in accordance with said oral agreement." His position is stated in his brief as follows:
"There is no dispute that the Statute applies to the oral agreement of employment here in dispute. However, it is well established that the Statute will not be construed in such a way as to *500 work a fraud upon the plaintiff who in good faith is induced by the defendants to change his position in reliance upon an oral agreement. * * *
In this case, the fraud which will result if the defendants are permitted to sustain the bar of the Statute of Frauds, is clear and substantial. * * *
The doctrine of equitable estoppel in cases involving the statute of frauds is well established in New Jersey where as here, the plaintiff has changed his position relying upon an oral promise. * * *"
For these propositions plaintiff cites 2 Williston, Contracts (rev. ed. 1936), § 533A; Restatement, Contracts, § 178, comment f; 2 Corbin, Contracts, § 321; 37 C.J.S., Statute of Frauds, § 246, p. 749 and various New Jersey cases. However, with commendable candor counsel admits that no New Jersey case has yet held that the statute may not be asserted against facts such as here alleged. Counsel nevertheless argues that the cited texts and cases have so clearly pointed the way that not only justice but logic dictates that we should take the step to the destination sought by plaintiff.
Much has been said in disapproval of the statute, while on the other hand it has fervent defenders. Deevy v. Porter, 11 N.J. 594, 595-596 (1953); Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 582 (1956); Stevens, "Ethics and the Statute of Frauds," 37 Corn. L.Q. 355 (1952); Note, "Statute of Frauds," 44 Harv. L. Rev. 1147 (1931). However, we may not decide this case upon the basis of whether or not we like the statute for, as Justice Jacobs said in Deevy, at page 596, "In any event, the policy underlying the statute and its continuance is legislative and our judicial function is to ascertain and apply it in the light of the authorities."
We find nothing in the authorities which impels the conclusion that the statute should not be permitted as a defense to the facts at bar. Actual fraud (such as the types mentioned in 37 C.J.S., supra, § 247, p. 754 and 2 Williston, supra, at pp. 1543-1544) is not alleged. Accepting the allegations of the complaint and affidavit as true and giving plaintiff the benefit of every favorable inference that *501 can be drawn therefrom, the most that can be said for plaintiff's case is that defendants changed their minds as to an important term of the contract  i.e., the drawing account. The defendants had the legal if not the moral right to do this. Grabow v. Gelber, 138 N.J. Eq. 586, 588-589 (Ch. 1946). "Thus, in order to justify the exercise of equitable jurisdiction, the fraud complained of must be * * * more than mere refusal of a party to perform his agreement, since either party has the right to refuse to execute a parol contract within the operation of the statute, and the exercise of that right is no more a fraud than a breach of any other contract." 37 C.J.S., supra, § 247, at page 755, citing Alexander v. Alexander, 96 N.J. Eq. 10 (Ch. 1924). See also Kufta v. Hughson, 46 N.J. Super. 222 (Ch. 1957); 2 Williston, supra, at p. 1544.
We find no case in New Jersey in which prejudicial reliance on conduct, representations and promises such as we have here, with the effects here alleged, has been held to prevent the assertion of the statute as a defense, nor has any such case been cited to us from other jurisdictions. In Kahn v. Cecelia Co., 40 F. Supp. 878 (D.C.S.D.N.Y. 1941), it was held it does not. Alaska Airlines v. Stephenson, 217 F.2d 295, 15 Alaska 272 (9 Cir. 1954), and Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88 (Sup. Ct. 1909), involved prejudice to the plaintiff much greater than in the case at bar, as Kufta v. Hughson, supra, involved less. We express no opinion on whether the quantum of prejudice should be the controlling factor, nor whether we would decide the Alaska Airlines and the Seymour cases in the same fashion, nor do we mean to indicate in what instances the assertion of the statute would be forbidden in cases such as this, upon principles of "equitable" or "promissory" estoppel. We merely hold that in the case at bar the defendants had the right to assert the statute and therefore that summary judgment was properly granted.
Affirmed.