OLYMPIC JUNIOR, INC., Appellant in
No. 71–1440, et al.

v.

DAVID CRYSTAL, INC., et al.

Appeal of Edward DeFABIO, in
No. 71–1441.

Appeal of Paul D'ALESSANDRO, in
No. 71–1442.

Nos. 71–1440 to 71–1442.

United States Court of Appeals,
Third Circuit.

Argued April 4, 1972.

Decided June 22, 1972.

Amedeo C. Jacovino, East Orange, N. J., for appellants.

Max Wild, Rubin, Wachtel, Baum & Levin, New York City, for appellees.

Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and McCUNE, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This is a contract action brought by appellants Edward DeFabio and Paul D'Alessandro, and their corporation, Olympić Juniors, Inc. ("Olympic"), against appellees David Crystal, Inc. ("Crystal"), and Philip E. Crystal. After the action was commenced, Crystal was acquired by appellee General Mills, Inc., which was thereupon joined as a party defendant.[1]

Count 2 of the amended complaint avers that an agreement existed among Olympic and the defendants that if Crystal were sold, Olympic would be included in the sale. Counts 3 and 4 aver that an agreement existed among DeFabio, D'Alessandro, and the defendants that DeFabio and D'Alessandro would be given five-year employment contracts in the event that Crystal were

sold. Both these agreements are alleged to have been breached. After considering affidavits, depositions, briefs, and oral argument, the District Court granted partial summary judgment for the defendants on the three counts mentioned.[2] This appeal followed. We agree with the District Court that summary judgment was proper as to Counts 3 and 4 (the employment-contract counts), but we disagree that summary judgment was proper as to Count 2 (the sale count).

## I. THE FACTS

In the early 1950's DeFabio and D'Alessandro, with the encouragement and financial support of Crystal, formed Olympic, the great majority of whose business was to make suits for Crystal. Apparently it is customary in the clothing industry for a "contractor," such as Olympic, to deal exclusively or almost exclusively with one "manufacturer," who supplies designs and materials and promotes the sale of garments that are actually tailored by the contractor.

During the years after formation of Olympic, relations with Crystal were beneficial to both corporations. But in late 1964 and early 1965, the owners of Crystal began negotiations to sell that company, and Olympic's owners felt that their security was threatened. To calm those fears, and perhaps to dissuade Olympic from seeking a merger partner, Crystal is alleged by the plaintiffs to have entered into an agreement with DeFabio and D'Alessandro, representing Olympic, whereby Crystal agreed that "if and when [Crystal] would be sold that [Olympic] would be part and parcel of that sale." (Complaint, Count 2, ¶2). Crystal is also alleged to have agreed

---

1. The action was commenced in the Superior Court of New Jersey, Law Division, Essex County, and from there it was removed by the defendants to the United States District Court. Jurisdiction rests on diversity of citizenship. See 28 U.S.C. §§ 1332, 1441.

2. After granting summary judgment on the three counts, the District Court made an

express determination that there was no just reason for delay and directed the entry of a final judgment dismissing the counts, all pursuant to Rule 54(b), Fed.R. Civ.P. Thus we have jurisdiction under 28 U.S.C. § 1291 to review the order granting partial summary judgment. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956).

with DeFabio and D'Alessandro that "if and when [Crystal] would be sold, [DeFabio and D'Alessandro] would be employed by [Crystal] for a period of five years after the sale takes place." (Complaint, Counts 3, 4, ¶2). No writing or other memorandum of the alleged agreement was made, however, except for the following letter:

"January 7, 1965

"Mr. Paul Dallesandro [sic]
Olympic Juniors
221 Bergen Street
Newark, New Jersey

"Dear Paul:

"As a result of the discussion we had in my office Thursday, January 7th, I am writing this letter to you to confirm the agreement that we reached at this time.

"The agreement constitutes a contract between us; if and when David Crystal is sold that Olympic Juniors will be part and parcel of that sale and that it will be at a price that will be satisfactory to both you and your partner. A working employment contract will be required from you and your partner at a salary suitable to both you and your partner for a period of five years after the sale takes place.

"You have been an important factor in the growth of our suit business over many years, and it is my earnest desire to see that you remain with us for years to come.

"Sincerely yours,
DAVID CRYSTAL, INC.
/s/ *Philip Crystal*
Philip Crystal
Vice-President"

The defendants admit that the letter is genuine, but they deny that it represents a contract. They concede that at one time it was the intention of Crystal and its management to include Olympic in the contemplated sale of Crystal and to employ DeFabio and D'Alessandro thereafter, but they deny that any agreement to that effect was ever reached. Defendants also contend that if agreements were ever made, they are unenforceable for several reasons, and that there has been no breach of the alleged agreements.

■ Since this is a diversity case, we look to state law for the applicable substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Waldron v. Aetna Casualty & Surety Co., 141 F.2d 230 (3d Cir. 1944); Moran v. Pittsburgh-Des Moines Steel Co., 166 F.2d 908 (3d Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770 (1948); Lind v. Schenley Industries, Inc., 278 F.2d 79 (3d Cir.), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L. Ed.2d 60 (1960); New Amsterdam Casualty Co. v. First Pennsylvania Banking & Trust Co., 451 F.2d 892 (3d Cir. 1971). Although the forum state is New Jersey, the alleged contracts may have been made in New York. Under the rule in Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), we look to the choice-of-law rules of New Jersey to determine whether that state would choose to apply its own substantive rule or the New York rule to each of the issues in this case. *E. g.*, Boase v. Lee Rubber & Tire Corp., 437 F.2d 527 (3d Cir. 1970); Goodemote v. Mushroom Transportation Co., 427 F.2d 285 (3d Cir. 1970); Slaughter v. Philadelphia National Bank, 417 F.2d 21 (3d Cir. 1969). Here, however, the law of New York is the same as that of New Jersey in every material respect, and we are spared the task of choosing which state's substantive law to apply.

## II. THE EMPLOYMENT CONTRACTS

■ Counts 3 and 4 of the Complaint are grounded upon alleged breaches of agreements to employ DeFabio and D'Alessandro, respectively, for a period of five years after the contemplated sale of Crystal. Such agreements fall within

the statute of frauds provision making agreements that are "not to be performed within one year from the making thereof" unenforceable unless they are evidenced by a sufficient memorandum. N.J.Stat.Ann. 25:1–5(e) (1940); N.Y. General Obligations Law, McKinney Consol.Laws, c. 24–A, § 5–701(1) (McKinney 1964).[3] In both New Jersey and New York a writing or memorandum does not suffice under the statute of frauds unless the writing itself contains the essential terms of the agreement, including the price or salary to be paid.[4] Here there is no genuine issue that the only writing is the letter quoted above. That letter contains no definite salary term, and therefore does not satisfy the requirements of the stat-

ute of frauds. Thus the District Court was correct in granting summary judgment for the defendants on counts 3 and 4.

## III. THE CONTRACT TO INCLUDE OLYMPIC IN THE SALE OF CRYSTAL

Count 2 of the Complaint alleges a breach of an agreement to include Olympic in the contemplated sale of Crystal, and with respect to this agreement the issues are more difficult.

■ 1. *The Statute of Frauds.* There can be little doubt that the alleged agreement to include Olympic in the sale of Crystal would be a "contract for the sale of personal property" within the meaning of Section 1–206 of the Uni-

3. *New Jersey*: McElroy v. Ludlum, 32 N.J.Eq. 828 (Ct.Err. & App. 1880); Barnes v. P. & D. Mfg. Co., 123 N.J.L. 246, 8 A.2d 388 (Ct.Err. & App. 1939); Deevy v. Porter, 11 N.J. 594, 95 A.2d 596 (1953); Dolan v. Miller, 179 A. 619, 13 N.J.Misc. 543 (Sup.Ct.1935); Kooba v. Jacobitti, 59 N.J.Super. 496, 158 A.2d 194 (App.Div.1960).

*New York:* Hausen v. Academy Printing & Specialty Co., 34 A.D.2d 792, 311 N.Y.S.2d 613 (1970); Hanan v. Corning Glass Work, 35 A.D.2d 697, 314 N.Y.S.2d 804 (1970); Genesco, Inc. v. Joint Council 13, 341 F.2d 482, 486 n. 2 (2d Cir. 1965); Tradeways Inc. v. Chrysler Corp., 342 F.2d 350 (2d Cir.), cert. denied, 382 U.S. 832, 86 S.Ct. 71, 15 L.Ed.2d 75 (1965) Grissman v. Union Carbide Corp., 279 F.Supp. 413 (S.D.N.Y.1967).

*See* Restatement of Contracts § 198, Comment d, Illustration 3 (1932).

Plaintiffs have argued that the doctrine of promissory or equitable estoppel might be invoked to preclude application of the statute of frauds. In this case, however, the alleged representations by defendants and reliance thereon by plaintiffs are clearly insufficient to prevent assertion of the statute of frauds. *See, e. g.*, Kooba v. Jacobitti, *supra*; Gilbert v. Gilbert, *infra* n. 4; Bulkley v. Shaw, 289 N.Y. 133, 44 N.E.2d 398 (1942); Scheuer v. Scheuer, 308 N.Y. 447, 126 N.E.2d 555 (1955); Newkirk v. C. C. Bradley & Son, 271 App.Div. 658, 67 N.Y.S.2d 459 (1947); Kahn v. Cecelia Co., 40 F.Supp. 878 (S.D.N.Y.1941); *see also* Babdo

Sales, Inc. v. Miller-Wohl Co., 317 F. Supp. 892 (S.D.N.Y.1970), rev'd on other grounds, 440 F.2d 962 (2d Cir. 1971).

4. *New Jersey*: Johnson & Miller v. Buck. 35 N.J.L. 338 (Sup.Ct.1872); Turkington v. Zuber, 100 N.J.Eq. 285, 134 A. 840 (Ct. Err. & App. 1926); Gaines v. Monroe Calculating Machine Co., 78 N.J. Super. 168, 188 A.2d 179 (App.Div.1963); Canister Co. v. Wood & Selick, Inc., 73 F.2d 312 (3d Cir.), petition for rehearing denied, 74 F.2d 1009 (3d Cir. 1934), cert. denied, 296 U.S. 590, 56 S.Ct. 101. 80 L.Ed. 417 (1935); *see also* Gilbert v. Gilbert, 66 N.J.Super. 246, 168 A.2d 839 (App.Div.1961).

*New York*: Steinberg v. Universal Machinenfabrik GMBH, 24 A.D.2d 886, 264 N.Y.S.2d 757 (1965), aff'd mem., 18 N.Y.2d 943, 277 N.Y.S.2d 142, 223 N.E. 2d 567 (1966); Behrman v. Peoples Camp Corp., 30 A.D.2d 973, 294 N.Y.S. 2d 658 (1968), aff'd mem., 25 N.Y.2d 920, 304 N.Y.S.2d 853, 252 N.E.2d 285 (1969); Ginsberg Machine Co. v. J. & H. Label Processing Corp., 341 F.2d 825 (2d Cir. 1965); *see* Poel v. Brunswick-Balke-Collender Co., 216 N.Y. 310, 110 N.E. 619 (1915); Willmott v. Giarraputo, 5 N.Y.2d 250, 184 N.Y.S.2d 97, 157 N.E. 2d 282 (1959); *cf.* Stulsaft v. Mercer Tube & Mfg. Co., 288 N.Y. 255, 43 N.E.2d 31 (1942); Morris Cohon & Co. v. Russell, 23 N.Y.2d 569, 297 N.Y.S.2d 947, 245 N.E.2d 712 (1969).

*See* Restatement of Contracts § 207 (c) (1932).

form Commercial Code, N.J.Stat.Ann. 12A:1–206 (1962), N.Y.U.C.C. § 1–206 (McKinney 1964).[5] Section 1–206 states, in pertinent part:

"[A] contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent."

Thus the writing required by the section must contain a "defined or stated price." Since the only writing in the present case contained no such term, Section 1–206 acts to deny full enforcement to the alleged contract.

5. Section 1–206 applies to all contracts for the sale of "personal property" that are not covered by the more specific sections of the Code. Although Olympic may have owned "goods," we see no reasonable argument that the alleged agreement can be considered a "contract for the sale of goods" so as to be within the coverage of Section 2–201. See Section 2–105. Nor do we believe, despite the fact that Olympic was a corporation, that the agreement can be seen as a "contract for the sale of securities" within Section 8–319.

6. Our research has revealed only one case in any of the jurisdictions that have adopted the Uniform Commercial Code that has reached this issue, and that case applied Section 1–206 in the manner noted above. R. J. Paquette Aviation Enterprise, Inc. v. C. B. Phillips, Inc., 241 So. 2d 180 (Fla.Dist.Ct.App.1970). Also supporting this construction are 1 R. Anderson, Uniform Commercial Code § 1–206:5 (2d ed. 1970), and Note, The Uniform Commercial Code, Section 1–206—A New Departure in the Statute of Frauds?, 70 Yale L.J. 603 (1961).

Although the court in Cohn, Ivers & Co. v. Gross, 56 Misc.2d 491, 289 N.Y.S. 2d 301 (App.T.1968), seemingly looked only to the value of the property included in the contract of sale in determining that Section 1–206 did not bar recovery, that court did not reach the question we face, since neither the amount sought to

It will be noted, however, that Section 1–206 does not act in a way that would bar the contract completely. Section 1–206, unlike the usual statute of frauds, merely makes the contract unenforceable beyond $5,000.[6] The conclusion is inescapable that unless the alleged contract is unenforceable for some other reason, the applicable statute of frauds would be no bar to enforcement of the contract to the extent of $5,000, regardless of the value of the property to be sold under the contract.

2. *Nonexistence of a Contract.* In support of the defendants' motion for summary judgment, Philip E. Crystal described the circumstances under which he wrote the letter of January 7, 1965. The affidavit, if believed, established that no contract was made on that date, and that the letter was merely a letter of intent.[7] Mr. Crystal also denied that

be recovered nor the value of the property included in the contract was over $5000.

The Wisconsin variation of Section 1–206, apparently drafted to avoid the construction noted, is as follows:

"[A] contract for the sale of personal property for the price of $5,000 or more is not enforceable by way of action or defense . . . ." Wis.Stats. § 401.–206.

Somewhat surprisingly, the Permanent Editorial Board Comment on this variation was simply: "No need for the amendment has been shown." 1 W. Willier & F. Hart, Bender's U.C.C. Service § 1–206, at 1–43 (rev. 1967).

7. Philip E. Crystal's affidavit, in pertinent part, follows:

"I wrote the letter at D'Alessandro's request to help him resolve a rift between himself and DeFabio. . . . D'Alessandro came to my office on January 7, 1965. He told me that De Fabio was attempting to make some sort of a deal with a firm named Moordale, another clothing manufacturer, in which he would exchange Olympic for a 50% interest in Moordale. D'Alessandro was very unhappy at this prospect, and wanted to continue doing business with Crystal, Inc. He asked me to give him a letter saying that if Crystal, Inc. were to be bought out by another company while Olympic was doing Crystal, Inc.'s work, Olympic would be part of that deal. He said that such a letter would help him to obtain peace with De

the parties had at any other time reached final agreement on the terms of including Olympic in the sale of Crystal.[8]

■ Philip E. Crystal's affidavit and deposition alleged facts which were sufficient to establish that no contract ever existed for the inclusion of Olympic in the sale of Crystal. Faced with these allegations, to avoid summary judgment defendants were required under Rule 56(e), Fed.R.Civ.P., to

> "come forward with affidavits setting forth specific facts showing that there [was] a genuine issue for trial."

Tripoli Co. v. Wella Corp., 425 F.2d 932, 935 (3d Cir.), cert. denied, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970); *accord*, Lockhart v. Hoenstine, 411 F.2d 455 (3d Cir.), cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Gostin v. Nelson, 363 F.2d 371 (3d Cir. 1966); Robin Construction Co. v. United States, 345 F.2d 610 (3d Cir. 1965); H. B. Zachry Co. v. O'Brien, 378 F.2d 423 (10th Cir. 1967); *see* Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc., 365 F.2d 742, 747 (3d Cir. 1966); *cf.* Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). But if matter presented by the plaintiffs through affidavits or depositions showed that a genuine issue existed with respect to any material fact, summary judgment for the defendants was improper. Fed.R.Civ.P. 56(c); Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S., 425 F.2d 34 (3d Cir. 1970); Rains v. Cascade Industries, Inc., 402 F.2d 241 (3d Cir. 1968); Long v. Parker, 390 F.2d 816 (3d Cir. 1968).

■ Although the affidavits presented by plaintiffs here are far from ideal, we believe that they are sufficient to show the existence of a genuine issue as to whether the alleged agreement existed. DeFabio's affidavit stated:

> "I have read the affidavit of Philip Crystal and wish to state that there are many inaccuracies set forth in said affidavit. In the first instance, there was an understanding as to price for the sale of the business
>
> . . . .
>
> ". . . . For many years, Philip Crystal did discuss with myself and my associate, Paul D'Alessandro, the fact that David Crystal, Inc. was going public and we would be an integral part of it. Additionally, on many occasions prior and subsequent to the document referred to, Mr. Crystal informed me and my partner that the amount of consideration that we could expect in the event that there was a

Fabio. I agreed and did as he asked. We never discussed any obviously essential terms such as price, method of payment, salaries, or duties. I was not given nor did I request any financial details about Olympic. Our conversation was very brief. My letter, which we merely considered as a statement of intention, was designed to help D'Alessandro convince De Fabio that he should not make a deal with Moordale, because if Olympic continued to do business with Crystal, a deal to sell out could be made if Crystal were bought out.

"I wish to state that if Olympic had continued to do business with Crystal, Inc., and during such continuation Crystal, Inc. were sold, I would have done whatever I could to help Olympic, D'Alessandro and De Fabio make a deal with the buyer. However, Olympic stopped doing business with Crystal, Inc. in 1967, and Crystal, Inc. was not sold before this lawsuit was started." (Appellants' appendix, pp. 19a–20a).

In his deposition, Mr. Crystal's testimony was to the same effect. (Appellees' appendix, pp. 40a–43a)

8. Appellees' appendix, p. 42a.

change in the present structure of David Crystal, Inc." (Appellants' appendix, pp. 28a to 29a–1).

D'Alessandro's affidavit stated:

"The specific consideration for the [letter of January 7, 1965] was worked out between Mr. Philip Crystal and Edward DeFabio and the amounts set forth for same are as follows: $300,000.00 for each share . . . . The reason why the letter was given to me is quite evident. . . . In order to entice Olympic Juniors, Inc. to continue said business relationship, Mr. Philip Crystal, on a number of occasions advised us that he had the authority of the Board of Directors to inform my associate and me that in the event of the change of the corporate structure of David Crystal, Inc., that we would be an integral part of said change." (Appellants' appendix, p. 31a).

The depositions considered by the District Court lend further support to the plaintiffs' argument that a genuine issue exists. DeFabio stated without equivocation that Philip E. Crystal "told me that I was going to get $300,000 for my share." (Appellees' appendix, p. 55a).

It is true, as defendants argue, that DeFabio and D'Alessandro in their depositions at times seemed to take positions inconsistent with their affidavits filed later. But it is also true that both men were pressed hard during the depositions and that neither of the two men exhibited compelling command of the English language or calm composure under pressure. During the depositions both attorneys objected and interrupted almost constantly. Even in the cold black-and-white of the reporter's transcript the confusion is apparent. Under the circumstances, the depositions do not show the absence of a genuine issue as to whether an agreement was reached.

3. *Vagueness and Indefiniteness of the Contract.* Defendants argue, with some persuasiveness, that even if the alleged agreement were found to exist, it would be too vague and indefinite to en-force. Although in certain cases a contract may be unenforceable because of vagueness or ambiguity, in the present case we believe that a proper disposition of this issue cannot be made on a motion for summary judgment. Since the terms of the agreement are themselves in issue, to attempt to determine at this stage of the litigation whether the terms are too vague to enforce would be mere speculation. We believe that plaintiffs should have the opportunity to present their evidence to the finder of fact.

4. *No Breach of the Agreement.* Defendants argue further that there was no "sale" of Crystal within the meaning of the agreement, if such an agreement existed, and thus there has been no breach. We believe that for reasons discussed above it is premature to decide this issue on the motion for summary judgment. The decision on this point will depend upon, and may be avoided by, the outcome of factual issues to be determined at trial. At the present time we cannot say, as a matter of law, that there has been no breach.

On remand it will be necessary to determine whether a contract ever existed; whether the contract is sufficiently definite, or can be made so through rules of construction, to be enforced without too great a risk of injustice; whether there has been a breach of the contract; and whether plaintiffs have suffered any damages because of the breach. We do not mean to intimate how those questions may ultimately be resolved. We hold only that the present record shows that genuine factual issues exist, and that if those issues are decided in plaintiffs' favor, damages may be recovered up to the $5000 limitation imposed by Section 1–206 of the Uniform Commercial Code. Thus summary judgment for the defendants was improper.

The order of the District Court will be affirmed insofar as it enters judgment for defendants on Counts 3 and 4. The order entering judgment for defendants on Count 2 will be reversed, and the case remanded for further proceedings in accordance with this opinion.