225 N.J. Super. 293 (1988)
542 A.2d 473
ILA SUTTON, PLAINTIFF-RESPONDENT,
v.
GORDON LIENAU, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 1988.
Decided March 31, 1988.
Amended opinion filed May 5, 1988.
*294 Before Judges O'BRIEN, HAVEY and STERN.
Bernard W. Hehl argued the cause for appellant (Hehl, Hehl & Gicking, attorneys for defendant-appellant; Bernard Hehl and Stephen F. Hehl on the brief and reply brief).
*295 Richard E. Kummer argued the cause for respondent (Kummer, Knox & Naughton, attorneys for plaintiff-respondent; Richard E. Kummer, Stephen R. Knox, James A. Flynn and Christine A. Barker on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant appeals from a portion of a final judgment confirming the entry of summary judgment dismissing defendant's counterclaim for specific performance of an option to purchase real property. Judgment was entered for plaintiff because the option was held unenforceable under the statute of frauds, N.J.S.A. 25:1-5 et seq. We now hold that a series of writings, including a memorandum signed by an authorized agent of the person against whom enforcement of the agreement is being sought, may satisfy the statute. Accordingly, we reverse and remand for further proceedings.
On or about October 31, 1981, Willard Sutton, plaintiff's late husband (Sutton),[1] entered into a written lease (as landlord) with defendant (as tenant) for real property located at 2204 Stanley Terrace, Union, New Jersey. The lease was for a five-year term commencing on November 1, 1981 and was executed with other documents related to the sale of Sutton's business to defendant. The lease also contained an "option to purchase" the premises in paragraph 34 contained in a rider to the lease. On December 31, 1984, defendant exercised the option by forwarding to the firm of the attorney who drew the lease, as trustee, monies sufficient to invoke the option. By letter dated January 8, 1985, the attorney, Alfred R. Kinney, wrote to plaintiff and advised her of her obligation to convey the property to defendant, but she refused to do so. Thereafter, *296 defendant demanded a judgment for specific performance or, in the alternative, damages, in a counterclaim to plaintiff's complaint filed in an action related to another aspect of the transaction.
The lease and the rider were executed in the presence of Kinney, who was Sutton's attorney and the scrivener of both documents.
Paragraph 34 of the two-paragraph rider was initially signed in the following form:
RIDER
....
34th: The tenant shall have an option to purchase the real property covered by this lease, together with any right of way which may also be assignable or transferable, during the term of this lease or any extension thereof, for the sum of $ ____ during the first five years of the lease or at a sum to be arrived at by the average of three appraisals during the second five years of the term if renewed. During said renewal the sale price shall be established by each party obtaining an appraiser, and the two appraisers picking a third, the average of the three appraisals shall be the established purchase price for exercise of the option to purchase.
[s] Gordon Lienau Gordon Lienau, Tenant
[s] Willard Sutton Willard Sutton, Landlord
It is not disputed that Sutton and defendant deliberately left the option purchase price "blank." According to defendant, "Sutton didn't know what the buildings were worth," and he and Sutton "agreed to leave the purchase price, contained in Paragraph 34 of the Rider, blank only until [Sutton] had the property appraised and until he [Sutton] determined a price." Defendant "trusted" Sutton and was willing to accept "whatever" option purchase price Sutton decided to insert in the rider. He stated in depositions that he "kn[e]w it would be fair."
Kinney arranged for an appraisal of the land and buildings, and on November 5, 1981, an appraiser inspected the property. On November 6, 1981, a written appraisal was sent to Kinney. *297 The property was appraised for a total market value of $110,000. On November 17, 1981, Kinney sent a letter to Sutton, with a copy to defendant, which read as follows:
 Re: Speed Trucking & Rigging
Dear Mr. Sutton:
Please find enclosed herewith a photocopy of an appraisal made for me by Leonard J. Zehnbauer. Please issue a check payable to Mr. Zehnbauer in the amount of $50.00 to cover the bill and forward it directly to Mr. Zehnbauer in the enclosed envelope.
I have also forwarded a copy of it to Mr. Lienau so that he can review it as well. If the two of you can agree on a figure, we can insert the figure in the lease and exchange papers and thereby close the deal.
If there is any question please call. Thank you.
 Very truly yours,
 ALFRED R. KINNEY
Sometime between November 17, 1981, and December 3, 1981, Kinney met with Sutton at his home and discussed the purchase price to be placed in the option. In his deposition, Kinney recalled his discussion with Sutton as follows:
Q. Do you recall what you and Mr. Sutton discussed with respect to the appraisal during the course of that meeting.
A. The value to be placed in the option to purchase that was a part of the lease that was given to Gordon Lienau.
Q. What did Mr. Sutton say to you?
A. The actual words I can't recall, but the sum and substance was something to the effect that his relationship with Gordon [Lienau] was such that he wanted to sell it to Gordon for $30,000 and he didn't care that the $100,000 [sic] was the value set forth in the [November 6, 1981] appraisal.
Q. Was anyone else present during that meeting?
A. Mrs. Sutton [plaintiff] was in and out I believe, of the room, and was present there most of the time. I don't recall anyone else being present.
Q. Do you recall whether Mrs. Sutton participated in the conversation with respect to the purchase price of the property to be inserted into the lease?
A. Not to my recollection. Mr. Sutton was a very strong-willed individual, and I don't think it was a question of asking her opinion.
Q. Did Mr. Sutton have any conversations with you at that time in which he indicated that $30,000 as the option price for the property was offset in any way by the amount of money [$175,000] he charged to Mr. Lienau for the [October 31, 1981] purchase of Speed Trucking & Rigging [Sutton's business, which was conducted on the leased property]?
A. Not that I can recall. My recollection is that he just gave me that figure [$30,000], and that was the figure he wanted in the lease, and he felt that that's *298 what he would expect Gordon Lienau to pay for the property, and that it was all part of one deal. There was a relationship between him and Mr. Lienau.
On or about December 3, 1981, Kinney typed "$30,000.00" onto a copy of the rider that had been signed by Sutton and defendant on October 31, 1981. On December 3, 1981, Kinney sent a letter to Sutton, which in pertinent part read as follows:
 Re: Sutton to Lienau
Dear Mr. Sutton:
At this point all contingencies with respect to the sale of Speed Trucking and Rigging have been met.
I have, in accordance with your direction, inserted $30,000.00 in the lease, as far as the cost of acquiring the property, under the option to purchase. I have the original of the [$175,000] note and all other papers here and will hold them here unless you request the same. I have forwarded copies of the same to you so that you may insert them in your file.
....
If there is anything further please advise.
Hoping this letter finds you in better health, I am,
 Very truly yours,
 ALFRED R. KINNEY
According to defendant, Kinney also telephoned him and "told [him] that the property had been appraised and that [he] was to write in `$30,000' in Paragraph 34 of [his copy of] the Rider." In his depositions, Kinney indicated that he "confirmed" the $30,000 purchase price to defendant.
Defendant thought $30,000 was a "very good price" and, following Kinney's telephone call, defendant "penned in" the figure "$30,000.00" on his copy of the rider that he and Sutton had signed on October 31, 1981.
Between October 31, 1981 and the time Kinney instructed defendant to write the figure "$30,000.00" on his signed copy of the rider, defendant had no conversations with Sutton "as to the value of the property." However, defendant said that at "some time after the property was appraised and the $30,000.00 figure agreed upon, [he] saw [Sutton] and thanked him for his kind offer." Defendant said that, in reply, Sutton told defendant *299 he "was like a son to him and had helped him throughout all the years."
After his meeting with Sutton conducted between November 17, 1981 and December 3, 1981, Kinney had no further personal contact with Sutton. Sutton died on February 18, 1982, leaving his entire estate to plaintiff.
In his written opinion granting plaintiff's motion for summary judgment, the motion judge stated:
While recent cases are lacking, New Jersey has followed the generally recognized rule [sic] that if an option agreement neither contains a provision specifying the price, nor provides for a mode whereby the price can be ascertained with certainty, other than the future agreement of the parties, enforcement of the option contract should be denied on the ground that it is indefinite and uncertain as to price. See Annot. 2 A.L.R.3d 701, 708.
The judge concluded that he had to decide the issue based on the writing at "the time at which a contract is made", that "... there are good reasons to require a memorandum mentioning the purchase price" and that "[a]t any rate, the parties did not provide for a valid option with the purchase price stated in writing." He therefore held the option unenforceable.
Defendant contends the option is enforceable "since all the requirements of the statute of frauds have been satisfied."
An option to purchase real estate embodied in a lease of that property is a contract for the "sale of real estate," N.J.S.A. 25:1-5d, and, therefore, within the statute of frauds (N.J.S.A. 25:1-5). McClung Drug Co. v. City Realty & Invest. Co., 91 N.J. Eq. 216, 218 (Ch. 1919), aff'd, o.b. 92 N.J. Eq. 237 (E. & A. 1920).[2] Because such an option is an "agreement or promise" within the statute of frauds, the "agreement or promise... or some memorandum or note thereof" must be "in writing, and signed by the party to be charged therewith, or by *300 some other person thereunto by him lawfully authorized." N.J.S.A. 25:1-5.
The writing required by the statute of frauds must contain the "essential terms of the contract." Gilbert v. Gilbert, 66 N.J. Super. 246, 252-253 (App.Div. 1961) (citation omitted). Only the party "to be charged therewith" need sign the writing. Charlton v. Columbia Real Estate Co., 67 N.J. Eq. 629, 632 (E. & A. 1905). However, an agent "acting under an oral authorization can furnish the memorandum which will bind a seller or buyer," and satisfy the statute of frauds. Herzog v. Tidaback, 67 N.J. Super. 14, 18 (Ch.Div. 1961) (citation omitted). In other words, an authorized agent can by his signature satisfy the requirement of a writing, and the agent's authority to do so for his principal "may be created orally and may be proved by parole evidence." Schenck v. Spring Lake Beach Improvement Co., 47 N.J. Eq. 44, 49 (Ch. 1899). As stated in Charlton v. Columbia Real Estate Co., supra, 67 N.J. Eq. at 633:
The memorandum is only necessary to evidence the contract, not to constitute it.
........
The memorandum or note is only to evidence what the contract was. To prevent perjury as to such contracts, the statute declares that evidence of what the contract was must be contained in some memorandum or note in writing, signed by the party to be charged therewith [or his authorized agent]. When the memorandum exists, and is legally given in testimony, it becomes evidence of the contract claimed to have been made. The memorandum is not the contract, but only evidence of the contract. [(emphasis in original)].
Moreover, it is not "necessary that all the terms of the contract be agreed to at one time, nor written down at one time, nor on one piece of paper. If all the papers, taken together, contain the whole bargain, they form such a memorandum as will satisfy the statute [of frauds] [citations omitted]." Id. at 632. See also Johnson & Miller v. Buck, 35 N.J.L. 338, 343 (Sup.Ct. 1872); accord Truex v. Ocean Dodge, Inc., 219 N.J. Super. 44, *301 50-51 (App.Div. 1987) (N.J.S.A. 12A:2-201; 12A:2-204); Hardy v. Hangen, 134 N.J. Eq. 176, 181 (Ch. 1943).
The evidence of the purchase option contract here consists of four writings. First, there is the copy of the lease and rider signed by Sutton and defendant on or about October 31, 1981 in which the option price in the rider was intentionally left blank. This writing contains all the essential terms of the purchase option contract, except the purchase price. Second, there is the copy of this same signed rider on which Kinney, on December 3, 1981 or a day or two before, typed in "$30,000.00" as Sutton's authorized agent and at Sutton's specific direction. Third, there is Kinney's December 3, 1981 letter, signed and sent by Kinney, to Sutton, in which Kinney stated:
I have, in accordance with your direction, inserted $30,000.00 in the lease, as far as the cost of acquiring the property, under the option to purchase.
Fourth, defendant inserted the purchase price on his copy of the lease pursuant to the telephone call from Kinney.
Kinney's authority must be acknowledged for purposes of the motion for summary judgment[3] and these writings contain all the essential terms of an option to purchase real estate.
Contrary to the judge's opinion, the writings were sufficient as an integrated whole and contained the price for the option to purchase. Therefore, the motion judge erred in concluding the option was "unenforceable under the New Jersey Statute of Frauds" because the parties "did not provide for a valid option with the purchase price stated in writing."
In light of our disposition on the statute of frauds issue, we remand for further proceedings and for consideration of all other legal issues raised before trial, including the issue of merger.
NOTES
[1] Sutton died of cancer on February 18, 1982, leaving his entire estate to plaintiff. He was apparently aware of the illness at all times relevant to this case.
[2] The motion judge correctly concluded that an option price did not constitute "consideration" which, pursuant to N.J.S.A. 25:1-8, could be supplied by parol evidence. Cf. Silverstein v. Keane, 19 N.J. 1, 7-11 (1955); Andreula v. Slovak Gymnastic, & c. No. 223, 140 N.J. Eq. 171 (E. & A. 1947).
[3] On the motion for summary judgment, the trial court was bound to accept the facts most favorable to defendant.